**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Case No.
1:21-CV-01333-JPB

## <u>PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

1700669

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................6

II.  LEGAL STANDARD ................................................................7

III. ARGUMENT...............................................................................8

    A.   Advancing Justice–Atlanta has standing to pursue its claims. .............8

        1.   Advancing Justice–Atlanta has properly alleged an imminent injury. ........................................................................8

        2.   Advancing Justice–Atlanta has properly alleged a diversion-of-resources injury. ..................................................11

    B.   The Individual Plaintiffs have standing to pursue their claims. .........14

    C.   Plaintiffs allege plausible claims on which relief may be granted...................................................................................19

        1.   The complaint adequately states Intentional Discrimination Claims (Counts I and II). ...............................19

        2.   The complaint adequately states Undue Burden (Count III) and Discriminatory Results (Count I) Claims..........................21

            a.   Plaintiffs have sufficiently stated claims challenging absentee ballot timing restrictions..............22

            b.   Plaintiffs have sufficiently stated claims challenging limitations on drop box access. ..................25

            c.   Plaintiffs have sufficiently stated claims challenging prohibitions on proactive mailing of ballot applications. ........................................................27

            d.   Plaintiffs have sufficiently stated claims challenging new identification requirements for ballot applications. ........................................................28

            e.   Plaintiffs have sufficiently stated claims challenging criminalization of certain return of ballot applications. ........................................................30

IV.  CONCLUSION ........................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Iron & Steel Inst. v. OSHA,*
    182 F.3d 1261 (11th Cir. 1999) ....................................................................14

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) ....................................................................................21

*Anderson v. Raffensperger,*
    497 F. Supp. 3d 1300 (N.D. Ga. 2020) ........................................................18

*Arcia v. Fla. Sec'y of State,*
    772 F.3d 1335 (11th Cir. 2014) ................................................................8, 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................7

*Barnett v. Okeechobee Hosp.,*
    283 F.3d 1232 (11th Cir. 2002) ....................................................................7

*Bochese v. Town of Ponce Inlet,*
    405 F.3d 964 (11th Cir. 2005) ....................................................................17

*Brown v. Azar,*
    497 F. Supp. 3d 1270 (N.D. Ga. 2020) ........................................................14

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
    408 F.3d 1349 (11th Cir. 2005) ..............................................................15, 16

*Chisom v. Roemer,*
    501 U.S. 380 ................................................................................................22

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ....................................................................................10

*Common Cause/Georgia v. Billups,*
    554 F.3d 1340 (11th Cir. 2009) ........................................................11, 12, 15

*Crawford v. Marion Cnty. Election Bd.*,
　553 U.S. 181 (2008) ................................................................29

*Democratic Exec. Comm. of Fla. v. Lee*,
　915 F.3d 1312 (11th Cir. 2019) ................................................21

*Duke v. Cleland*,
　5 F.3d 1399 (11th Cir. 1993) ....................................................21

*Fla. State Conf. of NAACP v. Browning*,
　522 F.3d 1153 (11th Cir. 2008) ........................................9, 10, 13

*Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*,
　775 F.3d 1336 (11th Cir. 2015) ................................................21

*GALEO v. Gwinnett County Bd. of Registrations and Elections*,
　499 F. Supp. 3d 1231 (N.D. Ga. 2020), *appeal docketed*, No. 20-
　14540 (11th Cir. Dec. 4, 2020) ................................................13

*Gill v. Whitford*,
　138 S. Ct. 1916 (2018) .............................................................15

*Greater Birmingham Ministries v. Merrill*,
　250 F. Supp. 3d 1238 (N.D. Ala. 2017) ....................................18

*Greater Birmingham Ministries v. Sec'y of State of Ala.*,
　992 F.3d 1299 (11th Cir. 2021) ...........................................20, 29

*Hunt v. Cromartie*,
　526 U.S. 541 (1999) ................................................................20

*Jacobson v. Fla. Sec'y of State*,
　974 F.3d 1236 (11th Cir. 2020) ........................................9, 12, 14

*Johnson v. Governor of State of Fla.*,
　405 F.3d 1214 (11th Cir. 2005) ................................................22

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ...........................................................14, 15

1700669

*Malowney v. Fed. Collection Deposit Grp.*,
  193 F.3d 1342 (11th Cir. 1999) ........................................................16

*Martin v. Kemp*,
  341 F. Supp. 3d 1326 (N.D. Ga. 2018) ......................................14, 15

*New Ga. Project v. Raffensperger*,
  484 F. Supp. 3d 1265 (N.D. Ga. 2020) .............................................17

*New Georgia Project v. Raffensperger*,
  976 F.3d 1278 ..................................................................................24, 25

*Norfolk S. Ry. Co. v. Geodis Logistics, LLC*,
  C.A. No. 1:19-CV-03341-JPB, 2020 WL 4938665 (N.D. Ga. June
  18, 2020) ...............................................................................................7

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
  781 F.3d 1245 (11th Cir. 2015) ...................................................8, 19

*Tsao v. Captiva MVP Rest. Partners, LLC*,
  986 F. 3d 1332 (11th Cir. 2021) ........................................................10

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003) ...........................................................16

*Vill. Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .....................................................................14, 20

## Regulations

Ga. Comp. R. & Regs. r. 183-1-14-0.8-.14 ...........................................25

## Rules

Fed. R. Civ. P. 8 ......................................................................................8

Fed. R. Civ. P. 12 ....................................................................................7

## Statutes

O.C.G.A. §§ 21-2-31(2) ..........................................................................25

## I.   INTRODUCTION

The record-setting voter turnout in the 2020 Election Cycle sadly met a cynical and discriminatory response from the Georgia General Assembly in the form of SB 202—a rushed omnibus bill that, instead of reflecting pride in the State's all-time high voter participation, imposes severe restrictions designed to walk back participation and suppress the exercise of franchise by non-White voters. Unless such restrictions are invalidated, SB 202 will disenfranchise Georgian voters in violation of both the U.S. Constitution and the Voting Rights Act of 1965.

SB 202 harms all Plaintiffs in this action. Plaintiff Asian Americans Advancing Justice–Atlanta ("Advancing Justice–Atlanta") is a nonprofit, nonpartisan organization whose already limited resources are at stake. Advancing Justice–Atlanta is dedicated to protecting the civil rights of Asian American and Pacific Islander ("AAPI") and immigrant communities in Georgia. Six other Plaintiffs are individual AAPI voters whose access to the ballot would be obstructed by the challenged provisions of SB 202. In short, AAPI voters vote absentee-by-mail at a rate higher than any other racial group in Georgia, and SB 202 unjustifiably impedes absentee-by-mail voting. The First Amended Complaint (ECF No. 27, "FAC") amply alleges the bases both for Plaintiffs' standing and their claims.

In their motion to dismiss, State Defendants dispute Plaintiffs' organizational and individual standing by proffering inapplicable legal tests and misreading precedent. They also improperly contest the merits of underlying facts and assert that SB 202's burdens on the right to vote are slight. But Plaintiffs have adequately stated their claims and, at this stage of the case, the Court should not weigh evidence regarding burdens or purported state interests. The Court should thus deny State Defendants' motion to dismiss in its entirety.

## II.   LEGAL STANDARD

When a Rule 12(b)(1) motion "represents a facial attack on jurisdiction—that is, the facts as stated supposedly do not provide cause for federal jurisdiction—then the facts alleged by the plaintiff are given the same presumption of truthfulness as they would receive under a [Rule] 12(b)(6) motion." *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Norfolk S. Ry. Co. v. Geodis Logistics, LLC*, C.A. No. 1:19-CV-03341-JPB, 2020 WL 4938665, at *1 (N.D. Ga. June 18, 2020) (court

"accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff").

Under Federal Rule of Civil Procedure 8(a), "the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015). According to this "simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*.

## III.   ARGUMENT

### A.   Advancing Justice–Atlanta has standing to pursue its claims.

#### 1.   Advancing Justice–Atlanta has properly alleged an imminent injury.

"Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). When challenging an election law, "organizations can establish standing . . . by showing that they will have to divert personnel and time to educating potential voters on compliance with the [new] law[]." *Id.* To make that showing, an organization must explain what activities it will "divert resources away from in order to spend additional resources" responding to a

challenged law. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020).

Advancing Justice–Atlanta has met this showing. Indeed, State Defendants admit—repeatedly—that Advancing Justice–Atlanta has alleged that it ***will*** divert limited financial and organizational resources to stem SB 202's negative effects, so State Defendants are left to argue that those injuries are "too speculative" to confer standing. MTD 9–10; FAC ¶¶ 21–23. That argument wilts under scrutiny.

To begin with, Advancing Justice–Atlanta's injuries are not speculative: SB 202 is currently the law and Advancing Justice–Atlanta will divert its limited resources to combat its negative effects. Advancing Justice–Atlanta has more than met its burden in showing an Article III injury by pleading how and why it will divert its resources in response to SB 202. FAC ¶¶ 21–23 (explaining in detail how SB 202's enactment will change Advancing Justice–Atlanta's work); *see Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161–66 (11th Cir. 2008) (holding that plaintiffs established injury-in-fact by alleging they anticipated diverting resources to educate voters on the challenged law). Indeed, as the Eleventh Circuit has explained, no further allegation is needed to establish standing. *See Arcia*, 772 F.3d at 1341. Contrary to State Defendants' suggestions, just because the organization's "injuries are anticipated rather than completed events" does not mean

that those prospective injuries are speculative or that they otherwise fail to "satisfy the immediacy and likelihood requirements" of Article III. *Fla. State Conf. of NAACP*, 522 F.3d at 1166. If State Defendants were correct, it would be effectively impossible for an organizational plaintiff to plead a prospective diversion-of-resources injury.

Similarly, State Defendants' reliance on *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F. 3d 1332 (11th Cir. 2021), and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013), is misplaced. Those cases dealt with a different scenario: one in which a plaintiff alleges an injury because of a ***higher risk*** of future injury—in *Tsao*, the higher risk that a data breach ***might*** lead to identity theft, and in *Clapper*, the higher risk that a government surveillance program ***might*** lead to intercepted communications. *Tsao*, 986 F. 3d at 1339; *Clapper*, 568 U.S. at 416. Because a higher risk of future injury did not qualify as an Article III injury, the plaintiffs could not call their preemptive actions to minimize their higher risk an Article III injury either. *Tsao* and *Clapper*, therefore, are inapplicable to the injury Advancing Justice–Atlanta has pleaded. A diversion of resources—unlike a mere risk of injury—***is*** an Article III injury. *See, e.g., Fla. State Conf. of NAACP*, 522 F.3d at 1161–66 (plaintiffs had established injury by alleging that they anticipated diverting resources to educate voters on the challenged law). And Advancing Justice–Atlanta

has pleaded that it **will** divert limited resources to combat SB 202, not that it **might** because of some other yet-to-be-seen developments. *See* FAC ¶¶ 21–23.

### 2. Advancing Justice–Atlanta has properly alleged a diversion-of-resources injury.

State Defendants next argue that Advancing Justice–Atlanta has not adequately alleged a diversion-of-resources injury for two reasons: first, that Advancing Justice–Atlanta did not say what activities it will "divert resources away from in order to spend additional resources on combatting" the impact of SB 202; and, second, that Advancing Justice–Atlanta cannot claim a diversion-of-resources injury because its mission already includes "civic engagement and organizing." MTD 11, 13 (emphases omitted). These two arguments are meritless.

First, the FAC explicitly alleges that Advancing Justice–Atlanta's efforts to combat SB 202's negative effects will require it to "deplete the already limited resources Advancing Justice–Atlanta ***otherwise devotes to existing GOTV*** ["get out the vote"] ***and election protection efforts***." FAC ¶ 23 (emphasis added). Put another way, because Advancing Justice–Atlanta does not have "limitless resources," it will be forced to divert some of its GOTV and election protection resources to educate voters about SB 202, including by putting together SB 202-specific educational materials it otherwise would not have produced. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350–51 (11th Cir. 2009) (diverting limited resources from

"regular activities" causes an Article III injury). These allegations establish a diversion-of-resources injury at the pleadings stage.

Second, State Defendants claim that because Advancing Justice–Atlanta's mission includes "civic engagement and organizing," it cannot claim a diversion-of-resources injury connected to SB 202. MTD 13 (emphasis omitted). In other words, State Defendants assert that, to establish an injury, an organization must plead that it will divert resources towards new efforts that do not align with or are otherwise outside the scope of its mission or core activities. But that is not what Eleventh Circuit precedent requires.

All that Advancing Justice–Atlanta must do is plead "what activities" it will "divert resources away *from* in order to spend additional resources" combating a challenged law—not that it will take on new efforts misaligned with its core activities or take on a new mission altogether. *See Jacobson*, 974 F.3d at 1250 (cleaned up) (emphasis in original). In case after case, the Eleventh Circuit has concluded that organizations have shown injury when they divert resources from one mission-aligned activity to another—even if the new activity relates to the organization's core activities. *See*, *e.g.*, *Common Cause/Georgia*, 554 F.3d at 1350 (a civil rights organization "actively involved in voting activities [had to] divert resources from its regular activities to educate and assist voters in complying with"

new voter ID law); *Fla. State Conf. of NAACP*, 522 F.3d at 1166 (three voting rights organizations had to divert resources from normal voter registration efforts to voter education about new voter ID law). Under State Defendants' overstated requirements for injury, none of those organizations would have had standing.

State Defendants rest their flawed argument on one district court decision that is subject to a pending appeal, *GALEO v. Gwinnett County Bd. of Registrations and Elections*, 499 F. Supp. 3d 1231, 1240 (N.D. Ga. 2020), *appeal docketed*, No. 20-14540 (11th Cir. Dec. 4, 2020). In *GALEO*, the district court concluded that a Latino civil rights organization whose "overarching purpose [was] to protect the civil rights of Georgia's Latino community" through "organizing voter education, civic engagement, [and] voter empowerment" could not claim it was "diverting resources from getting out the vote and voter education" to educating voters about the COVID-19 "mail voting process" because that activity was too much like its "core activities." *Id.* at 1240. That court's reasoning, however, cannot be reconciled with the many Eleventh Circuit cases holding that organizations need not depart from their core missions to allege a diversion-of-resources injury. *See, infra* pp. 7–8 (collecting cases where organizations had standing when they diverted resources from one mission-aligned activity to another). And those Eleventh Circuit cases—not the *GALEO* court's decision—bind this Court. That State Defendants can muster only

an outlier district court decision being appealed (and a Seventh Circuit opinion) to prop up their injury argument confirms that their motion must be denied under controlling Eleventh Circuit precedent.

**B.     The Individual Plaintiffs have standing to pursue their claims.**

Should this Court determine that Advancing Justice–Atlanta has sufficiently alleged standing, the court need not determine at this time whether Individual Plaintiffs also have standing. As the Eleventh Circuit has held, if *any* plaintiff "has standing to bring all claims in an action, the court need not inquire into the standing of the others." *Am. Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999) (cleaned up); *see Vill. Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018); *Brown v. Azar*, 497 F. Supp. 3d 1270, 1277 (N.D. Ga. 2020).

That said, the Individual Plaintiffs have alleged more than is necessary to establish standing. To have standing, and therefore a justiciable "case or controversy," Plaintiffs must demonstrate that they have suffered a particularized, concrete injury to a legally protected interest. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992).

Plaintiffs agree that standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Jacobson*, 974 F.3d

at 1245 (quoting *Lujan*, 504 U.S. at 561). But at this stage of litigation, the pleading need only provide fair notice of Plaintiffs' claims, as explained above. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) (holding that the individual plaintiff had standing in voting rights case where the allegations that the defendant violated the NVRA were "sufficient to satisfy the requirements of notice pleading," which the court acknowledged as a liberalized standard).

In the voting rights context, "***any burden*** on [individual voter plaintiffs'] ability to vote that is not imposed on other voters, ***no matter how slight***, is an injury sufficient to confer standing." *Martin*, 341 F. Supp. 3d at 1333 n.5 (citing *Charles H. Wesley Educ. Found., Inc.*, 408 F.3d at 1352) (emphasis added). Indeed, "[a] plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Charles H. Wesley Educ. Found., Inc.*, 408 F.3d at 1352; *see also Common Cause/Georgia*, 554 F.3d at 1352 ("The inability of a voter to pay a poll tax . . . is not required to challenge a statute that imposes a tax on voting, and the lack of an acceptable photo identification is not necessary to challenge a statute that requires photo identification to vote in person."). Because "a person's right to vote is individual and personal in nature…voters who allege facts showing disadvantage to themselves as individuals" are deemed to have proper standing to sue. *Gill v.*

*Whitford*, 138 S. Ct. 1916, 1929 (2018). Where, as here, Plaintiffs seek relief to prevent future injury, literal certainty of such injury is not required; instead, "substantial likelihood" of harm is sufficient for standing purposes. *See Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999).

The Court should reject State Defendants' argument that the Individual Plaintiffs have failed to allege "an injury of any kind." MTD 6. For every Individual Plaintiff, the FAC more than satisfies the requirements of the well-established notice pleading rule, which State Defendants ignore. *See United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 881 (11th Cir. 2003) ("complaint need contain only a statement calculated to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" (internal quotations omitted)); *see also Charles H. Wesley Educ. Found., Inc.*, 408 F.3d at 1352.

The FAC alleges facts regarding each Individual Plaintiff's particular history of voting by absentee ballot, preference to vote by absentee ballot, and the reasons for this preference, which persist and will persist in future elections (*e.g.*, the security, convenience, and reliability of dropping absentee ballots in drop boxes). *See* FAC ¶¶ 24–29. Each Individual Plaintiff voted in recent Georgia elections, and joined the instant suit to prevent ***future harm*** in the coming elections. *See* FAC ¶ 44 (outlining relief requested). The FAC explains how SB 202 specifically and

unlawfully imposes a barrier to the Individual Plaintiffs' ability to vote by absentee ballot in the future. *See, e.g.*, FAC ¶¶ 30, 82–117.

Notwithstanding these factual allegations in the FAC, State Defendants feign confusion as to what the alleged injury to Individual Plaintiffs might be, and cite *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 977 (11th Cir. 2005), for the proposition that a court may not guess what a plaintiff's injury might be. MTD 6. But *Bochese* is not a voting rights case and is further distinguishable because the court found that plaintiff Bochese failed to explain how he had been injured by the ordinance he challenged. *Bochese*, 405 F.3d at 980. In contrast, the Individual Plaintiffs here expressly and clearly explain how specific provisions of SB 202 impinge on their right to vote. *See* FAC ¶¶ 82–117.

Without citing any authority or other support, State Defendants assert that the FAC must explicitly allege that the Individual Plaintiffs will vote in the future and, moreover, will vote by a particular method. MTD 6–7. But no such requirement applies, particularly at this stage of the litigation; courts in this Circuit permit voting rights cases to proceed beyond the pleading stage in the absence of such future allegations. *See, e.g.*, *New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1285 (N.D. Ga. 2020) (denying motion to dismiss as to individual plaintiffs on standing grounds); *see* Complaint for Injunctive and Declaratory Relief, No. 20-cv-01986-

ELR (N.D. Ga. May 8, 2020), ECF No. 1 at ¶ 20 (stating only that the individual plaintiff "has voted in every election . . . and believes it is her right and duty to vote as a citizen," without reference to her intent to vote in the future). *See also Greater Birmingham Ministries v. Merrill*, 250 F. Supp. 3d 1238, 1242 (N.D. Ala. 2017) (denying the motion to dismiss as to individual plaintiffs on standing grounds); *see* Second Amended Complaint, No. 15-cv-02193-LSC (N.D. Ala. Dec. 6, 2016), ECF No. 112 at ¶¶ 19–23 (describing individual plaintiff without reference to her intent to vote in the future).

State Defendants' reliance on *Anderson v. Raffensperger*, 497 F. Supp. 3d 1300 (N.D. Ga. 2020) is unavailing. First, that case had proceeded to a factual hearing by the time the court issued its ruling on standing. *Anderson*, 497 F. Supp. 3d at 1306. Next, State Defendants quote the *Anderson* court's observation that "somebody's ***preference*** for a particular voting method says little about the method they ***intend*** to use," MTD 7 (emphasis supplied by State Defendants), out of context. That quote did not address the adequacy of the complaint; instead, it reflected the court's critique of one expert's findings—in particular, the expert's reliance on an online national poll asking for voters' hypothetical preferences. *Anderson*, 497 F. Supp. 3d at 1321.

In contrast, the FAC clearly articulates the concrete and particularized injury that the Individual Plaintiffs will suffer as a result of SB 202's enforcement, sufficiently alleging injury-in-fact. As such, Plaintiffs have established injury-in-fact at the current pleading stage.

### C.    Plaintiffs allege plausible claims on which relief may be granted.

This Court should also reject State Defendants' 12(b)(6) arguments. Plaintiffs have, in great detail, pleaded the elements of their claims against these Defendants, far surpassing the requirement to provide "fair notice" of the grounds upon which their claims, individually and collectively, rest. *See Palm Beach Golf Ctr.-Boca*, 781 F.3d at 1260. Each of the challenged provisions interacts with the others, compounding burdens on the right to vote for eligible Georgia voters, and especially AAPI voters. *See, e.g.*, FAC ¶¶ 115, 122, 130, 134. Adjudication of Plaintiffs' claims must take into account the cumulative injury caused by all challenged provisions.

### 1.    The complaint adequately states Intentional Discrimination Claims (Counts I and II).

Plaintiffs have sufficiently alleged that five components of SB 202, cumulatively and individually, intentionally discriminate against voters of color, and particularly AAPI voters, in violation of Section 2 of the Voting Rights Act (Count I) and the Fourteenth and Fifteenth Amendments (Count II). FAC ¶¶ 118–37. A law is unconstitutional under these provisions so long as race is a "motivating" factor in

its enactment. *Arlington Heights*, 429 U.S. at 265. The *Arlington Heights* factors, as supplemented by the Eleventh Circuit, guide courts in this inquiry. *See Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021) ("*GBM*"). Because a discriminatory motive may hide behind seemingly neutral statements, courts specifically examine whether the *Arlington Heights* factors support an "*inference* of invidious purpose." *Arlington Heights,* 429 U.S. at 270 (emphasis added).

Plaintiffs have alleged each of the *Arlington Heights* factors in detail. *See, e.g.*, FAC ¶¶ 73–79 (disproportionate impact on voters of color that was also known and reasonably foreseeable); *id.* ¶¶ 60–72 (Georgia's history of racially discriminatory voting restrictions); *id.* ¶¶ 1–2, 73–81 (events leading to SB 202's passage, including record election turnout by AAPI voters); *id.* ¶¶ 77–81 (opaque process leading to the enactment of SB 202); *id.* ¶ 76 (contemporary statements of legislators); *id.* ¶ 9–10, 59–60, 91 (tenuousness of the proffered justifications). Plaintiffs' specific allegations must be taken as true at this stage, *see supra* pp. 7–8, and Defendants' own assessment of the *Arlington Heights* factors, MTD 24–25, is irrelevant. Plaintiffs have adequately alleged an "inference of invidious purpose" behind SB 202. Since claims of intentional discrimination are fact-specific, they are rarely decided pre-trial. *See Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).

### 2. The complaint adequately states Undue Burden (Count III) and Discriminatory Results (Count I) Claims.

Plaintiffs have adequately alleged that the challenged provisions unduly burden Georgians' fundamental right to vote, as protected by the First and Fourteenth Amendments, see FAC ¶¶ 132–37 Count III), and disproportionately impact voters of color, in violation of Section 2, *see id.* ¶¶ 118–20, 122 (Count I).

In the instant motion, State Defendants dispute—or ignore—Plaintiffs' relevant factual allegations regarding undue burden and discriminatory results of SB 202, offering conclusory assertions that the State's interest justify any burden. More often than not, State Defendants fail to identify interests purportedly advanced by challenged provisions, *see, e.g.*, MTD 16–17 (delayed and truncated ballot application window), 18–19 (limitations on drop box access), 22–23 (additional ID requirements), and they never explain why any proffered regulatory interests "make it necessary to burden the plaintiff's rights," *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "[E]ven when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden. The more a challenged law burdens the right to vote, the stricter the scrutiny to which we subject that law." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019). State Defendants' general contentions as to the extent of the burdens imposed, or the weight afforded to purported state interests, as to any and

all challenged provisions can be resolved only after intensive fact-finding. *See, e.g.,*

*Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1348

(11th Cir. 2015). For this reason, the Eleventh Circuit has reversed dismissals of

*Anderson-Burdick* claims on the pleadings. *See, e.g.*, *Duke v. Cleland*, 5 F.3d 1399,

1405 (11th Cir. 1993) (reversing dismissal because it was "impossible for [the court]

to undertake the proper" *Anderson-Burdick* analysis before discovery).

Moreover, State Defendants misstate the legal standard for claims under

Section 2 of Voting Rights Act. *See* MTD 13. Section 2(a) requires only proof of

discriminatory "results," not of discriminatory intent. *Chisom v. Roemer*, 501 U.S.

380, 403–04; *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1227 (11th Cir.

2005). Section 2(b) "make[s] clear that an application of the results test requires an

inquiry into the totality of the circumstances." *Chisom*, 501 U.S. at 394 (internal

quotations omitted). And, in looking into the totality of the circumstances, a

violation if shown if "members of a protected class have less opportunity than other

members of the electorate to participate in the political process and to elect

representatives of their choice." *Id.* at 388 (cleaned up).

### a. Plaintiffs have sufficiently stated claims challenging absentee ballot timing restrictions.

SB 202 truncates the periods in which voters may request, and be issued,

absentee ballots. Previously, a Georgia voter could request an absentee ballot up to

180 days before an election. FAC ¶ 83. Now, under SB 202, a voter can request a ballot only up to 78 days in advance of Election Day, and the request must be received by the county election administration at least 11 days prior to the election— eliminating over three months of ballot access. FAC ¶ 85. Similarly, SB 202 delays the issuance of absentee ballots; whereas county boards of registrars could previously issue absentee ballots to voters up to 49 days before Election Day, they must now delay such issuance by nearly three weeks, no earlier than 29 days prior to the election. FAC ¶¶ 84–85.

In their motion, State Defendants attempt to argue a state interest in mitigating "problems for voters" who would otherwise request absentee ballots within ten days before Election Day. MTD 16. Even leaving aside that their argument ventures well beyond the current pleadings stage, this purported rationale is not credible where there is no dispute that SB 202 substantially delays, and cuts in half, the absentee ballot request and issuance periods. FAC ¶¶ 83–85. Tellingly, State Defendants fail to identify *any* legitimate state interest in postponing the ballot request period by 102 days, or deferring ballot issuance by 20 days. Plaintiffs have sufficiently alleged, and will prove at trial, that no adequate state interest justifies the constriction of these periods to access absentee ballots. FAC ¶ 91.

State Defendants cite as support other states' deadlines for submitting absentee ballots. MTD 17–18. But other states' absentee ballot timelines are minimally probative, if at all, because Plaintiffs' claims are based in part on Georgia's historical and socioeconomic context, its unique electoral conditions, and circumstances surrounding the passage of SB 202. *See, e.g.*, FAC ¶¶ 122, 131, 135.

Further, State Defendants' assertion that "deadlines involving absentee ballots do not implicate the right to vote at all" is baseless. MTD 18 (cleaned up). State Defendants cite *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1281, but that case does not support their position. In reviewing the trial court's preliminary injunction ruling, the Eleventh Circuit in *New Georgia Project* made no sweeping pronouncement inoculating restrictions involving absentee ballot deadlines from judicial scrutiny. Moreover, in cataloging available voting methods, the court in that case relied on provisions of Georgia's election laws that either no longer exist or have been substantially curtailed because of SB 202. *See, e.g.*, *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020) (citing previous absentee ballot deadlines and drop box rules which have since been abrogated by SB 202). Thus, the reasoning of *New Georgia Project* does not apply here.

Finally, State Defendants are incorrect that Plaintiffs have not alleged the necessary causal connection for this challenge. *See* FAC ¶¶ 86–90. As set forth in

the FAC, Georgian AAPI voters disproportionately rely on absentee voting, and absentee voting is an essential voting avenue for AAPI voters—including those who are LEP, new or first-time voters, and those fearful or reluctant to frequent public places in light of pervasive anti-Asian violence. *Id.*

### b. Plaintiffs have sufficiently stated claims challenging limitations on drop box access.

In the 2020 Election Cycle, in the midst of a global pandemic, Georgia's State Election Board authorized drop boxes for the secure return of completed absentee ballots. FAC ¶¶ 92–94. That rule was adopted under the Board's vested statutory authority and carried the force of law. *See* Ga. Comp. R. & Regs. r. 183-1-14-0.8-.14 (citing O.C.G.A. §§ 21-2-31; 21-2-386 as statutory authority to enact rule); *see also* O.C.G.A. §§ 21-2-31(2) (it is the State Election Board's duty "[t]o promulgate rules and regulations so as to obtain . . . the legality and purity in all primaries and elections" and "[t]o formulate, adopt, and promulgate such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct"). Under that Board rule, Georgian voters enjoyed the ability to safely and securely cast their ballots in one of 330 drop boxes across the State, most of which were freestanding outside of a building and often accessible 24 hours a day. FAC ¶ 92.

SB 202 now limits the authority of the State Election Board to afford the same drop box access to Georgia's voters that the Board previously authorized. SB 202

severely caps the number of drop boxes in each county, prohibits outdoor drop boxes except in a Governor-declared emergency, and reduces the hours and days during which drop boxes are available to accept ballots. FAC ¶¶ 97–99. State Defendants argue that SB 202 cannot have placed a burden on the right to vote, because it enacts Georgia's first ***statutory*** authorization of drop boxes. But their position ignores that the State Election Board adopted its 2020 rule pursuant to statutory authority.

State Defendants do not dispute that SB 202 will reduce voters' access to drop boxes in comparison to the 2020 Election Cycle. Instead, they posit that such restrictions are "justified by the state's regulatory interests." MTD, 20.[1] State Defendants' argument—which does not identify any specific regulatory interest—cannot be adjudicated on a motion to dismiss, because resolution of the character and magnitude of the burden on the right to vote will require an evidentiary record. *See supra* pp. 21–22. And while State Defendants claim "there is no right to vote in any particular manner," MTD 19, Plaintiffs do not request any specific voting method; they seek only to invalidate a rule that will severely burden voters without any compelling justification.

---

[1] State Defendants also suggest that drop box access is inconsequential due to the availability of "locations to drop off mail." MTD 19, n.10. But drop boxes are a crucial voting method for voters who do not wish to "assume the risk of mail delays" yet seek to "avoid the crowds and long lines associated with in-person voting." FAC ¶ 95.

Finally, Plaintiffs have sufficiently alleged the causal connection between reduced availability of drop boxes and AAPI voters' decreased ability to participate in the political process. AAPI voters, including Individual Plaintiffs, disproportionately vote using absentee ballots, which are returned through various means, including by drop box. FAC 11, n.2; FAC ¶¶ 24–30, 57. The effect of drop box limitations will be acutely felt in counties with substantial populations of AAPIs and other non-White communities. FAC ¶ 100.

### c.   Plaintiffs have sufficiently stated claims challenging prohibitions on proactive mailing of ballot applications.

During the June 2020 Primary Election, Secretary Raffensperger authorized the State's mailing of absentee ballot applications to all of Georgia's registered voters. FAC ¶ 102. Now, however, SB 202 prohibits all levels of election officials from sending applications, except upon request of a registered voter or relative. FAC ¶ 104. State Defendants argue that limitations on government officials mailing applications are not a concrete or particularized injury, yet they cite no authority for such a proposition. MTD 21, n.12. As alleged in the FAC, SB 202's blanket prohibition has injured Advancing Justice–Atlanta, which will divert significant resources away from its usual GOTV efforts to assist AAPI voters, particularly AAPI LEP voters, in navigating the application process. FAC ¶¶ 104–07.

State Defendants characterize these prohibitions on mailing applications to registered voters as "minor" and imposing "no burden." MTD 20–21. As with other challenged provisions in this matter, the nature and severity of the burden cannot be decided on the pleadings and must await development of the evidentiary record. *See supra* p. 21. Plaintiffs have adequately alleged the causal connection between SB 202's restrictions on proactive application mailing and denial of equal opportunity for AAPI voters, who are more frequently LEP or first-time voters (and face more barriers to accessing the absentee ballot request process), to participate in elections. FAC ¶¶ 103–04, 119–22.[2]

### d. Plaintiffs have sufficiently stated claims challenging new identification requirements for ballot applications.

For voters without Georgia driver's licenses or identification cards, SB 202 sets unnecessary and burdensome photocopying and presentation requirements when requesting absentee ballots. FAC ¶ 109. These provisions disproportionately

---

[2] Moreover, State Defendants mischaracterize SB 202's restrictions on the mailing of absentee ballot applications. SB 202 permits the mailing of applications by non-governmental entities "only to individuals who have not already requested . . . an absentee ballot." MTD, Ex. A at 41:1025-1029. Thus, it is not accurate to say that Advancing Justice–Atlanta can send "as many absentee-ballot applications to as many voters as [it] like[s], up until the time that the voter returns a completed application." MTD 21. If a voter has already requested but not timely received an absentee ballot application, Advancing Justice–Atlanta would be foreclosed from sending that voter an application. FAC ¶ 107.

impact AAPI and LEP voters, who are less likely to carry state-issued IDs and more likely to require assistance understanding and overcoming complicated voting procedures. FAC ¶¶ 110–11.

State Defendants argue that a photo identification requirement does not unconstitutionally burden the right to vote, but they do not cite any cases in which this issue was decided on the pleadings. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) (reviewing district court ruling on summary judgment); *GBM*, 992 F.3d at 1315 (same). *Crawford* did not hold that, as a matter of law, a photo identification requirement is *per se* constitutional. Instead, the Supreme Court reached its decision "on the basis of the record that has been made in this litigation," after weighing evidence that included expert reports and deposition testimony. *Crawford*, 553 U.S. at 202. Moreover, in *Crawford*, the Court acknowledged that a photo identification requirement might saddle certain groups with a "heavier burden"—such as persons "who because of economic or other personal limitations may find it difficult either to secure a copy of their birth certificate or to assemble the other required documentation." *Crawford*, 553 U.S. at 199.

Here, AAPI and LEP voters are classes of persons who will experience a special burden from SB 202's new photo identification requirements. FAC ¶¶ 110–11. The issue is a factual one requiring development of the evidentiary record.

Plaintiffs have adequately alleged the causal connection between SB 202's new application identification requirements and denial of equal opportunity for AAPI voters, who are more frequently LEP or first-time voters unfamiliar with ballot request processes, to participate in the electoral process. FAC ¶¶ 88, 111.

> **e.    Plaintiffs have sufficiently stated claims challenging criminalization of certain return of ballot applications.**

Plaintiffs challenge SB 202's provisions criminalizing certain voter assistance in returning completed absentee ballot applications. FAC ¶¶ 113–17. As with their treatment of other challenged provisions, State Defendants again reach for arguments that extend well past the pleadings. *See, e.g.*, MTD 23–24 (arguing that the State's regulatory interest "more than outweighs any burden"). At this stage, any comparison to other state election laws is inappropriate and misleading, and any disagreements about the weight of the evidence are not ripe for resolution. *See supra* p. 24. Plaintiffs have adequately alleged the causal connection between SB 202's criminalization of certain ballot application return assistance and a disproportionate negative effect on AAPI voters, who are more frequently LEP or first-time voters. FAC ¶¶ 88, 115.

## IV.    CONCLUSION

For the foregoing reasons, State Defendants' Motion to Dismiss should be denied.

Respectfully submitted this 25th day of June, 2021.

*s/Hillary Li*
PHI NGUYEN (Georgia Bar No. 578019)
HILLARY LI (Georgia Bar No. 898375)
**ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA**
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
404 585 8446 (Telephone)
404 890 5690 (Facsimile)
*pnguyen@advancingjustice-atlanta.org*
*hli@advancingjustice-atlanta.org*

EILEEN MA*
**ASIAN AMERICANS ADVANCING JUSTICE-ASIAN LAW CAUCUS**
55 Columbus Avenue
San Francisco, CA 94111
415 896 1701 (Telephone)
415 896 1702 (Facsimile)
*eileenm@advancingjustice-alc.org*

NIYATI SHAH*
TERRY AO MINNIS*°
**ASIAN AMERICANS ADVANCING JUSTICE-AAJC**
1620 L Street, NW, Suite 1050
Washington, DC 20036
202 815 1098 (Telephone)
202 296 2318 (Facsimile)
*nshah@advancingjustice-aajc.org*
*tminnis@advancingjustice-aajc.org*

LEO L. LAM*
R. ADAM LAURIDSEN*
CONNIE P. SUNG*
CANDICE MAI KHANH NGUYEN*
**KEKER, VAN NEST AND PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400  (Telephone)
415 397 7188 (Facsimile)
*llam@keker.com*
*alauridsen@keker.com*
*csung@keker.com*
*cnguyen@keker.com*

*Attorneys for Plaintiff*
*\*Admitted pro hac vice*
*° Not admitted in D.C.*

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1C, N.D. Ga.

Dated: June 25, 2021                    *s/R. Adam Lauridsen*
                                        R. ADAM LAURIDSEN
                                        *Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on June 25, 2021, a true and correct copy of the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

Dated: June 25, 2021                    *s/R. Adam Lauridsen*
                                        R. ADAM LAURIDSEN
                                        *Counsel for Plaintiffs*

1700669