# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, et al., <br><br> Defendants. | Civil Case No. 1:21-CV-01333 |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1717608

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................5

II. LEGAL STANDARD ............................................................................7

III. ARGUMENT..........................................................................................8

    A. Plaintiffs have adequately alleged injury in fact. ........................9

        1. Advancing Justice–Atlanta has adequately alleged an injury-in-fact. .........................................................................9

        2. The Individual Plaintiffs have adequately alleged an injury-in-fact. .......................................................................12

    B. Plaintiffs' injuries are traceable to and redressable by the County Defendants. ...................................................................13

        1. Plaintiffs have sufficiently alleged that their injuries are traceable to the County Defendants. ..........................................14

        2. Plaintiffs have sufficiently alleged that relief against the County Defendants will redress their injuries............................15

IV. CONCLUSION.....................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. Iron & Steel Inst. v. OSHA*,
  182 F.3d 1261 (11th Cir. 1999) ....................................................................... 8

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ....................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 7

*Barnett v. Okeechobee Hosp.*,
  283 F.3d 1232 (11th Cir. 2002) ....................................................................... 7

*Bush v. Gore,*
  531 U.S. 98 (2000) ........................................................................................ 18

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
  408 F.3d 1349 (11th Cir. 2005) ..................................................................... 13

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................ 10, 11

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ................................................................ 12, 13

*Fla. State Conf. of NAACP v. Browning*,
  522 F.3d 1153 (11th Cir. 2008) ........................................................... 10, 11, 12

*Friedman v. Snipes*,
  345 F. Supp. 2d 1356 (S.D. Fla. 2004) ........................................................... 18

*Ga. Advoc. Off. v. Jackson*,
  No. 19-14227, 2021 WL 2944338 (11th Cir. July 14, 2021) ......................... 18

*Ga. Latino All. for Human Rights v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012) ..................................................................... 12

*Gibson v. Firestone*,
    741 F.2d 1268 (11th Cir. 1984) ..............................................................................18

*I.L. v. Alabama*,
    739 F.3d 1273 (11th Cir. 2014) ..............................................................................18

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ................................................................................9

*Lewis v. Governor of Ala.*,
    944 F.3d 1287 (11th Cir. 2019) ..............................................................13, 16, 17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................8

*Made in the USA Found. V. United States*,
    242 F.3d 1300 (11th Cir. 2001) ..............................................................................18

*Moody v. Holman*,
    887 F.3d 1281 (11th Cir. 2018) ........................................................................14, 18

*Newman v. Alabama*,
    683 F.2d 1312 (11th Cir. 1982) ..............................................................................18

*Norfolk S. Ry. Co. v. Geodis Logistics, LLC*,
    No. 1:19-CV-03341-JPB, 2020 WL 4938665 (N.D. Ga. June 18,
    2020) .........................................................................................................................7

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 1245 (11th Cir. 2015) ................................................................................8

*Utah v. Evans*,
    536 U.S. 452 (2002)................................................................................................17

**Rules**

Fed. R. Civ. P. § 8(a).............................................................................................................8

## I. INTRODUCTION

During the 2020 Election Cycle, Georgia's Asian American and Pacific Islander ("AAPI") community came out in record numbers to vote. But rather than celebrate that triumph for democracy, Georgia's legislature and governor responded by enacting Senate Bill 202 ("SB 202"): a law that imposes severe voter restrictions designed to suppress the votes of the AAPI community and other non-white voters.

A few weeks later, Organizational Plaintiff Asian Americans Advancing Justice–Atlanta ("Advancing Justice–Atlanta") and Individual Plaintiffs Steven Paik, Deepum Patel, Nora Aquino, Thuy Hang Tran, Thao Tran, and Anjali Enjeti-Sydow (collectively, "Individual Plaintiffs") filed this lawsuit—challenging several provisions of SB 202 that violate Section 2 of the Voting Rights Act of 1965 and the United States Constitution and seeking an injunction to prevent the enforcement of those challenged provision. In the First Amended Complaint, ECF No. 27 ("FAC"), Plaintiffs named as defendants the Secretary of State, members of the State Election Board, and the County Boards of Registration and Elections, associated Board members and Elections Directors of Cobb County, Clayton County, Dekalb County, Forsyth County, Fulton County, and Gwinnett County—the Atlanta-area counties where Advancing Justice–Atlanta focuses its election work and where the Individual Plaintiffs are registered to vote.

In their motion to dismiss, ECF No. 53 ("Counties' MTD") the County Defendants argue only that Plaintiffs lack standing. They start by saying that Plaintiffs' alleged injuries are too speculative. Far from it: SB 202 is the law and the County Defendants have no choice but to enforce it. As a result, SB 202 will burden the Individual Plaintiffs and other AAPI voters in Georgia, and force Advancing Justice–Atlanta to divert its resources to combat these new burdens. These injuries— explained in detail in the First Amended Compl., ECF No. 27 ("FAC")—suffice to establish an Article III injury.

The County Defendants also claim that Plaintiffs' injuries are neither traceable to nor redressable by the County Defendants. But the County Defendants are the ones responsible for implementing and enforcing many of the voting restrictions in SB 202 that Plaintiffs challenge—including the new restrictions for requesting and mailing absentee ballots, the new voter identification requirements, and the new limits on drop boxes—and an injunction preventing the County Defendants from implementing and enforcing these restrictions would significantly redress the injuries that Plaintiffs allege in the FAC. That is all that traceability and redressability require.

Unable to shore up their injury-traceability-redressability arguments, the County Defendants resort to arguing that Plaintiffs also lack standing because they

have not sued all the elections officials in Georgia's 159 counties, which means (in their view) that an injunction limited to the County Defendants would invariably create non-uniformity in how SB 202 is enforced in the state. But that argument has nothing to do with standing—it goes to the scope of potential remedies—and Plaintiffs are not obligated to seek global injunctive relief that reaches elections officials in all of Georgia's counties when a narrower injunction will redress Plaintiffs' injuries.

## II. LEGAL STANDARD

When a Rule 12(b)(1) motion "represents a facial attack on jurisdiction—that is, the facts as stated supposedly do not provide cause for federal jurisdiction—then the facts alleged by the plaintiff are given the same presumption of truthfulness as they would receive under a [Rule] 12(b)(6) motion." *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Norfolk S. Ry. Co. v. Geodis Logistics, LLC*, No. 1:19-CV-03341-JPB, 2020 WL

4938665, at *1 (N.D. Ga. June 18, 2020) (court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff").

Under Federal Rule of Civil Procedure 8(a), "the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (cleaned up). According to this "simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. (cleaned up).

## III.   ARGUMENT

To establish standing under Article III, a plaintiff must plead: (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Advancing Justice–Atlanta and the Individual Plaintiffs have each pleaded sufficient allegations to establish they have standing, but if even one Plaintiff has standing, this Court need look no further. *Am. Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999).

### A.     Plaintiffs have adequately alleged injury in fact.

#### 1.     Advancing Justice–Atlanta has adequately alleged an injury-in-fact.

"Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). When challenging an election law, "organizations can establish standing . . . by showing that they will have to divert personnel and time to educating potential voters on compliance with the [new] law[]." *Id.* To make that showing, an organization must explain what activities it will "divert resources away from in order to spend additional resources" responding to a challenged law. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020).

Advancing Justice–Atlanta has made this showing. It has pleaded in detail how and why it will divert its already limited resources to stem the negative tide of SB 202 on AAPI voters—most of whom reside in the Metro Atlanta area—and which activities it will need to divert resources from to accomplish this. FAC ¶¶ 21–23; 25. Unable to contest that Advancing Justice–Atlanta has alleged that it will divert limited financial and organizational resources to stem SB 202's negative effects, the County Defendants fall back on two arguments. First, that Advancing

Justice–Atlanta's injuries are too speculative. Second, that Advancing Justice–Atlanta has failed to show a diversion-of-resources injury because its efforts in response to SB 202 relate to its "core activities." Counties' MTD at 8-9. Both arguments are unavailing.

First, the County Defendants argue that Advancing Justice–Atlanta's injuries are too speculative. But there is nothing "speculative" about them: SB 202 is currently the law, and Advancing Justice–Atlanta will divert its limited resources to combat its negative effects. FAC ¶¶ 21–23. To the County Defendants, however, apparently only a "past injury" suffices for Article III, because any "future injury" is "hypothetical." Counties' MTD at 8-9. The Eleventh Circuit disagrees: an organizational plaintiff whose "injuries are anticipated rather than completed events" still "satisf[ies] the immediacy and likelihood requirements" of Article III. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161–66 (11th Cir. 2008) (holding that plaintiffs established injury-in-fact by alleging they anticipated diverting resources to educate voters on the challenged law). If the certainty the County Defendants demand were what Article III required, prospective injuries would never suffice for standing.

The County Defendants' reliance on *Clapper* is also misplaced. That case dealt with a different scenario: one where a plaintiff alleges an injury because of a

***higher risk*** that a government surveillance program ***might*** lead to intercepted communications. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Because a mere exposure to a higher risk of injury did not qualify as an Article III injury, the *Clapper* plaintiffs could not call their preemptive actions to minimize that higher risk an Article III injury either. *Clapper* is thus inapplicable to the injury Advancing Justice–Atlanta has pleaded: a diversion of resources—unlike a mere *risk* of injury—***is*** an Article III injury. *See, e.g., Fla. State Conf. of NAACP*, 522 F.3d at 1161–66. And Advancing Justice–Atlanta has pleaded that it ***will*** divert limited resources to combat SB 202, not that it ***might*** because of some other yet-to-be-seen developments. *See* FAC ¶¶ 21–23. At this stage, this Court must accept as true these statements of the burdens that the law imposes and the steps that Advancing Justice–Atlanta will take in response to SB 202. Given this, Advancing Justice–Atlanta has established an Article III injury.

Second, the County Defendants argue that Advancing Justice–Atlanta cannot claim a diversion-of-resources injury because its mission already includes "civic engagement, in general and voter education and GOTV in particular." Counties' MTD at 9–10. In other words, the County Defendants assert that, to establish an injury, Advancing Justice–Atlanta must plead that it will divert resources towards new efforts that do not align with its mission or are otherwise outside the scope of

its core activities. This argument finds no support in binding authority. Just because Advancing Justice–Atlanta's mission includes voting rights work does not mean it cannot suffer a diversion-of-resources injury when a new election law is enacted. To the contrary, the Eleventh Circuit has routinely held that organizations already engaged in voting rights work suffer a diversion-of-resources injury when a new elections law ushers in changes to the voting process about which they must educate voters. *See*, *e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (a civil rights organization "actively involved in voting activities [had to] divert resources from its regular activities to educate and assist voters in complying with" new voter ID law); *Fla. State Conf. of NAACP*, 522 F.3d at 1166 (three voting rights organizations had to divert resources from normal voter registration efforts to voter education about new voter ID law); *see also Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (an immigrant rights organization "cancelled citizenship classes to focus on" increased inquiries about a new immigration law). The same is true here.

    **2.    The Individual Plaintiffs have adequately alleged an injury-in-fact.**

The County Defendants do not dispute that SB 202 has burdened absentee voting. Counties' MTD at 10. Instead, they contend that the Individual Plaintiffs have not suffered an injury at all, propping up that argument by merely pointing out

that "no legal requirement forces voters to vote absentee." Counties' MTD at 10. That is true, but irrelevant. If a rule makes it harder for someone to vote, it causes "an injury sufficient for standing." *See Common Cause/Georgia*, 554 F.3d at 1351–52. And "[a] plaintiff need not have the franchise wholly denied to suffer [an Article III] injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005). That interest here is the right to vote, and the Individual Plaintiffs have alleged that SB 202's voting restrictions have injured that right. *See* FAC ¶¶ 82–117. Because that suffices at this stage, the Court should reject the County Defendants' injury arguments.

### B. Plaintiffs' injuries are traceable to and redressable by the County Defendants.

To establish traceability, a plaintiff must "name[] defendants [who] possess authority to enforce the complained-of provision," and show a "causal connection between [their] injury and the challenged action of the defendant[s]." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296, 1299 (11th Cir. 2019) (cleaned up). And in assessing redressability, the crucial question is "whether a decision in a plaintiff's favor would significantly increase the likelihood that [they] would obtain relief that directly redresses the injury that [they] claim to have suffered"—a "relatively squishy" standard. *Id.* at 1301 (cleaned up). Critically, "Article III also does not

demand that the redress sought by a plaintiff be complete." *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018) (cleaned up). Here, the Individual Plaintiffs and Advancing Justice–Atlanta have shown both that their injuries are traceable to the County Defendants, and that the relief they have sought from this Court will significantly increase the likelihood that their injuries will be redressed.

### 1. Plaintiffs have sufficiently alleged that their injuries are traceable to the County Defendants.

The County Defendants concede they have no choice but to enforce SB 202, Counties' MTD at 2, so the core of their traceability argument is instead that the FAC "is bereft of any factual allegations tying Plaintiffs' alleged future injuries to the County Defendants." Counties' MTD at 13. That argument is unsupported by the allegations in the FAC.

The FAC directly explains why Plaintiffs' injuries are traceable to the County Defendants: they are the ones "responsible for the conduct of primary and general elections" in each of their counties, including the "day-to-day operations of running elections," which include enforcing many of the challenged provisions in SB 202. FAC ¶¶ 33-50 (citing, throughout, O.C.G.A. §§ 21-2-40; 21-2-70). Indeed, the FAC details how several of the challenged election procedures in SB 202—restricted timeframes to request and receive absentee ballots, barriers to access secure ballot drop boxes, the prohibition against proactive mailing of ballot applications, and

additional and burdensome identification requirements—must be implemented and enforced by elections officials at the county level. FAC ¶¶ 82-112. And the FAC explains the specific ways in which SB 202's enforcement will burden AAPI voters, thereby injuring the Individual Plaintiffs and Advancing Justice–Atlanta. FAC ¶¶ 88, 100. These allegations are more than sufficient to show how Plaintiffs' injuries are traceable to the County Defendants' conduct.

In another effort to refute traceability, the County Defendants disclaim all responsibility for passing SB 202, laying the blame for its passage on Georgia's state political branches. Their blame-shifting has no force here: the relevant question for traceability is not who passed the law, but who will cause the injury. And as explained, the County Defendants bear responsibility for enforcing SB 202 in the Metro Atlanta counties where many AAPI voters (including the Individual Plaintiffs) live and where Advancing Justice–Atlanta focuses its elections work. This will burden the right to vote of the Individual Plaintiffs and deplete the resources Advancing Justice–Atlanta must expend to serve AAPI voters. Put another way, these injuries are directly traceable to the County Defendants' obligation to enforce SB 202 in upcoming and all future elections.

    **2.**    **Plaintiffs have sufficiently alleged that relief against the County Defendants will redress their injuries.**

The thrust of the County Defendants' redressability argument is that this Court

cannot redress Plaintiffs' injuries because there may be other unnamed defendants who could injure Plaintiffs too. Counties' MTD at 13-14. But the "relatively squishy" redressability standard does not demand that a plaintiff name every defendant who could contribute to an injury; it merely demands that a plaintiff name defendants against whom a decision will "significantly increase" the likelihood of getting redress for their injury. *Lewis*, 944 F.3d at 1301 (cleaned up).

Plaintiffs here have met their burden in showing redressability: an injunction preventing the County Defendants from enforcing SB 202 will prevent injuries to Plaintiffs, alleviating burdens on the Individual Plaintiffs' right to vote and burdens on Advancing Justice–Atlanta's resources. As the FAC explains, Plaintiffs are injured because SB 202 was crafted to burden AAPI voters and other voters of color, continuing Georgia's trend of targeting "the Metro Atlanta region, where the majority of AAPI voters in Georgia reside," with restrictive voting measures. FAC ¶ 66 (explaining the history of targeting the Metro Atlanta region to harm AAPI voters); *see also* FAC ¶ 100 (listing Gwinnett and Fulton Counties as examples where SB 202's drop-box rule will disproportionately burden AAPI voters). Unsurprisingly, Plaintiffs named election board officials in counties that fit that mold: Cobb County, Clayton County, Dekalb County, Forsyth County, Fulton County, and Gwinnett County. The Individual Plaintiffs vote in three of those

counties, and Advancing Justice–Atlanta supports AAPI voters in all six. *See* FAC ¶¶ 20, 24-29.

An injunction against the County Defendants will thus redress the Individual Plaintiffs' injuries because their counties' elections officials will be prohibited from enforcing unlawful restrictions on their right to vote; and it will redress Advancing Justice–Atlanta's injuries because Advancing Justice–Atlanta will no longer need to divert its resources (or at least divert fewer resources) to combat the negative tide of SB 202 on the AAPI communities it serves. Indeed, because the vast majority of Georgia's AAPI voters reside in these Atlanta-area counties (and given their geographic proximity to Gwinnett-based Advancing Justice–Atlanta), *see* FAC ¶ 25, these are the counties where enforcing SB 202 most burdens Advancing Justice–Atlanta's resources. These facts more than establish that relief from this Court will "significantly increase" the likelihood that Plaintiffs' injuries will be redressed as a "as a practical matter." *Lewis*, 944 F.3d at 1301; *Utah v. Evans*, 536 U.S. 452, 461 (2002).

The County Defendants resist this conclusion by arguing that there are county elections officials in Georgia's 153 other counties—not named in Plaintiffs' FAC—who could *also* injure Plaintiffs. In effect, the County Defendants argue that redressability requires that a plaintiff's lawsuit seek a remedy that would redress its

injury in full. Not true. "Article III also does not demand that the redress sought by a plaintiff be complete." *Moody*, 887 F.3d at 1287 (cleaned up). To the contrary, a "partial remedy [is] sufficient for redressability." *Made in the USA Found. V. United States*, 242 F.3d 1300, 1310 (11th Cir. 2001); *accord I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014). That other unnamed entities may threaten Plaintiffs does not undermine Plaintiffs' standing to enjoin those defendants who will cause them the most significant or direct injuries. By showing that an injunction against the County Defendants will unburden the Individual Plaintiffs' right to vote, and will relieve Advancing Justice–Atlanta of the significant strain on its resources supporting AAPI voters in the Metro Atlanta area, Plaintiffs have adequately shown redressability.[1]

---

[1] As for the County Defendant's reliance on *Bush v. Gore* to raise unequal-application-of-the-law concerns, that case was expressly "limited to the . . . circumstances" of the 2000 Presidential Election. 531 U.S. 98, 109 (2000). And the district court decision they cite does not stand for the sweeping proposition that when a court orders election-law relief, each county must run elections identically; it merely stands for the proposition that courts should not undermine the one-person-one-vote principle—something not at issue here. *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1381 (S.D. Fla. 2004). More to the point, these concerns have nothing to do with standing and everything to do with remedial issues not presently before the court. Regardless, as the Eleventh Circuit has explained, "injunctive relief must be tailored to fit the nature and extent of the established violation," and so an injunction that is "broader than necessary to remedy the constitutional violation" is an abuse of discretion. *Ga. Advoc. Off. v. Jackson*, No. 19-14227, 2021 WL 2944338, at *6 (11th Cir. July 14, 2021) (quoting *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984) and *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982)). Because the injuries alleged in the FAC against the County Defendants arise from how SB 202 is enforced in the counties where the Individual Plaintiffs

## IV. CONCLUSION

For the foregoing reasons, this Court should deny the County Defendants' motion to dismiss in its entirety.

Respectfully submitted this 26th day of July, 2021.

*s/Hillary Li*
PHI NGUYEN (Georgia Bar No. 578019)
HILLARY LI (Georgia Bar No. 898375)
**ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA**
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
404 585 8446 (Telephone)
404 890 5690 (Facsimile)
*pnguyen@advancingjustice-atlanta.org*
*hli@advancingjustice-atlanta.org*

EILEEN MA*
**ASIAN AMERICANS ADVANCING JUSTICE-ASIAN LAW CAUCUS**
55 Columbus Avenue
San Francisco, CA 94111
415 896 1701 (Telephone)
415 896 1702 (Facsimile)
*eileenm@advancingjustice-alc.org*

NIYATI SHAH*
TERRY AO MINNIS*º
**ASIAN AMERICANS ADVANCING JUSTICE-AAJC**
1620 L Street, NW, Suite 1050
Washington, DC 20036
202 815 1098 (Telephone)
202 296 2318 (Facsimile)
*nshah@advancingjustice-aajc.org*
*tminnis@advancingjustice-aajc.org*

LEO L. LAM*
R. ADAM LAURIDSEN*
CONNIE P. SUNG*
CANDICE MAI KHANH NGUYEN*
**KEKER, VAN NEST AND PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400 (Telephone)
415 397 7188 (Facsimile)
*llam@keker.com*
*alauridsen@keker.com*
*csung@keker.com*
*cnguyen@keker.com*

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*
*º Not admitted in D.C.*

---

live and where Advancing Justice–Atlanta focuses its election work, an injunction tailored to apply to the County Defendants is appropriate.

## CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1C, N.D. Ga.

Dated: July 26, 2021             *s/R. Adam Lauridsen*
                                 R. ADAM LAURIDSEN
                                 *Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on July 26, 2021, a true and correct copy of the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all attorneys of record.

Dated: July 26, 2021             *s/R. Adam Lauridsen*
                                 R. ADAM LAURIDSEN
                                 *Counsel for Plaintiffs*