UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ASIAN AMERICANS ADVANCING JUSTICE–ATLANTA, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:21-cv-01333-JPB |
| BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State, et al., | |
| Defendants. | |

## **ORDER**

Before the Court are the following motions:

1. Defendants Brad Raffensperger, Rebecca Sullivan, Sara Tindall Ghazal, Matthew Mashburn and Anh Le's (collectively "State Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 41);

2. Defendants Fulton, DeKalb, Gwinnett, Cobb, Clayton and Forsyth Counties and each county's named elections officials' (collectively "County Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 53); and

3. Defendants Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee and Georgia Republican Party, Inc.'s (collectively "Intervenor Defendants") Motion to Dismiss (ECF No. 54).[1]

---

[1] State Defendants, County Defendants and Intervenor Defendants are collectively referred to as "Defendants."

Having fully considered the papers filed therewith, the Court finds as follows:

## I.    BACKGROUND

Plaintiffs Asian Americans Advancing Justice-Atlanta ("AAAJ-A"), Steven J. Paik, Deepum Patel, Nora Aquino, Thuy Hang Tran, Thao Tran and Anjali Enjeti-Sydow (collectively "Plaintiffs") filed this action seeking injunctive and declaratory relief with respect to certain provisions of Georgia Senate Bill 202 ("SB 202").[2]  Governor Brian Kemp signed SB 202 into law on March 25, 2021, and the challenged provisions regulate election-related processes and activities ranging from absentee ballot voting to out-of-precinct in-person voting.

Plaintiffs allege that the challenged provisions violate the United States Constitution and the Voting Rights Act ("VRA") and specifically oppose them on the grounds that they are discriminatory and impose an undue burden on the right to vote.

## II.    DISCUSSION

County Defendants move to dismiss the Amended Complaint solely on standing grounds; Intervenor Defendants challenge Plaintiffs' claims on the merits only; and State Defendants seek dismissal both on standing grounds and on the merits.  The Court will address the standing question first.  *See Cuban Am. Bar*

---

[2] Plaintiffs amended their Complaint on April 27, 2021.

*Ass'n v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995) (stating that the Court is obligated "'to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based'" (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991))).

### A.   Standing[3]

To satisfy standing requirements under Article III of the United States Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[3] Standing is jurisdictional, *see Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991), and a motion to dismiss for lack of standing can rest on either a facial or factual challenge to the complaint, *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  In evaluating a facial challenge, a court considers only the allegations in the complaint and accepts them as true, whereas in a factual challenge, a court considers matters outside the pleadings, such as testimony and affidavits.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Here, the parties do not reference matters outside the Complaint with respect to their standing arguments.  Therefore, the Court will evaluate State Defendants' standing argument as a facial challenge and will limit its analysis to facts alleged in the Complaint.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These requirements ensure federal courts adjudicate only actual "cases" and "controversies."[4]  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019).

## 1.    Injury

"'[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing [it] to divert resources to counteract those illegal acts.'"  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)).  In *Common Cause/Georgia*, the Eleventh Circuit Court of Appeals found that the plaintiff had established an injury sufficient to challenge a Georgia voting statute because the

---

[4] "Where only injunctive relief is sought, only one plaintiff with standing is required."  *Gwinnett Cnty. NAACP v. Gwinnett Cnty. Bd. of Registration & Elections*, 446 F. Supp. 3d 1111, 1118 (N.D. Ga. 2020) (quoting *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018)); *see also, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (finding that it was not necessary to consider the standing of other plaintiffs where standing was established as to one plaintiff); *Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing, we are not required to decide whether the other plaintiff, the one who has not altered his behavior . . . , has standing.").  Therefore, the Court's analysis will focus on one plaintiff for the purpose of deciding the instant motions to dismiss.

plaintiff planned to divert resources from its regular voter registration, mobilization and education activities to a campaign to educate and assist voters in complying with the new voter photo identification requirement under the challenged statute. *See id.* The court reasoned that this diversion constituted an adequate injury because it would cause the organization's noneconomic goals to suffer. *See id.* at 1350-51. Courts have found that a sufficient injury is demonstrated for standing purposes even when the diversion of resources is only "reasonably anticipate[d]." *E.g.*, *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (alteration in original) (internal punctuation and citation omitted).

Here, the Amended Complaint alleges that SB 202 will cause AAAJ-A to divert resources away from its core activities to initiatives that will inform voters of and help them navigate SB 202's changes to the election process. For example, AAAJ-A asserts that it will divert resources that it "otherwise devotes to existing [get-out-the-vote] and election protection efforts," Am. Compl. ¶ 23, ECF No. 27, to "undertake significant efforts to counteract and stem the negative impact that SB 202 will have" on Asian American and Pacific Islander  ("AAPI") voters and Limited English Proficiency ("LEP") voters, *id.* ¶ 21. AAAJ-A further explains that these efforts will include educating voters on new restrictions; producing, translating and distributing "significant" print and digital materials regarding the

requirements of SB 202; and identifying voters whose absentee ballots are rejected and assisting them with the process of curing their ballots. *Id*. ¶¶ 21-22.  AAAJ-A concludes that these additional activities will deplete the limited resources that it devotes to its normal election-related activities. *Id*. ¶ 23.

Based on these allegations, which are generally similar to those asserted by the organization plaintiff in *Common Cause/Georgia*, the Court finds that AAAJ-A has alleged a diversion of resources that is sufficient to show an injury for standing purposes.[5] *See Common Cause/Georgia*, 554 F.3d at 1350.

The Court is not persuaded by State and County Defendants' argument that AAAJ-A lacks standing because its alleged diversion of resources is not "different in nature" from its current work and instead constitutes baseline work it is already doing.  State Defs.' Br. 10-11, ECF No. 41-1.  In *Common Cause/Georgia*, the court noted that one of the plaintiffs was "actively involved in voting activities" and planned to divert resources "to educate and assist voters" in complying with the challenged voting identification requirements.  554 F.3d at 1350.  In finding that standing was established there, the court focused on the ***diversion*** of resources—the shifting of resources from one activity to another—as the essence

---

[5] Notwithstanding this decision, Plaintiffs will be expected to prove at trial that they have indeed suffered an injury to be entitled to relief.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.21 (1982).

of the inquiry and did not mention, much less impose, the counterintuitive requirement that the new activities must further a different purpose within the organization. *Id*. And, as stated above, a reasonably anticipated diversion of resources suffices.

Even the court in *Common Cause Indiana v. Lawson*, which State and County Defendants cite in support of their position, had a "hard time imagining" why "an organization would undertake any additional work if that work had nothing to do with its mission." 937 F.3d 944, 955 (7th Cir. 2019). In the end, the *Common Cause Indiana* court concluded that the voting advocacy organizations had established an injury for standing purposes by showing that they planned to expand voter education programs, among other things, to counter the effects of the challenged statute.[6] *Id*.

Additionally, State and County Defendants' reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is misplaced. The Supreme Court of the United States in *Clapper* found that the plaintiffs lacked standing because the future injury they identified was not certainly impending where they did not have

---

[6] The only other case State and County Defendants cite in support of their argument—*Georgia Ass'n of Latino Elected Officials, Inc. v. Gwinnett County Board of Registration and Elections*, 499 F. Supp. 3d 1231, 1240 (N.D. Ga. 2020)—is on appeal to the Eleventh Circuit.

knowledge of the government's enforcement practices relating to the statute, and they could not provide a credible basis for their fear of prosecution under the statute. *Id*. at 411. Unlike in *Clapper*, the key standing question is whether AAAJ-A has demonstrated that SB 202 will cause it to divert resources away from its normal activities, not whether it faces potential prosecution under SB 202.

The opinion in *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021), which State Defendants cite as an additional reason to find that Plaintiffs lack standing in this case, similarly does not require a different result. *Tsao* involved an "insubstantial," "non-imminent" and general threat of identity theft to an individual as a result of a data breach. *Id.* at 1345. That type of case is thus quite different from the instant pre-enforcement challenge to SB 202.

In any event, it is well settled that "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging [a] law." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (internal punctuation omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). To the contrary, "'the very purpose of the Declaratory Judgment Act'" is to address the "[t]he dilemma posed by . . . putting the challenger to the choice between abandoning his rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (quoting *Abbott Lab'ys v. Gardner*, 387

U.S. 136, 152 (1967)).  Therefore, courts allow a plaintiff to bring a pre-enforcement suit "when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution."  *Wollschlaeger*, 848 F.3d at 1304 (internal punctuation omitted) (quoting *Driehaus*, 573 U.S. at 159).  This type of injury is not considered too remote or speculative to support standing.  *See id*. at 1305.

### 2.    Traceability and Redressability[7]

It is well-settled that "[t]o satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560).  Further, "it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly."  *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (internal punctuation omitted) (quoting *Digit.*

---

[7] State Defendants do not address the traceability and redressability prongs of the standing analysis and therefore appear to concede these points.  Regardless, the Court is satisfied that the traceability and redressability requirements are satisfied in this case based on the information currently before it.  The Court notes that the issue of subject matter jurisdiction cannot be waived and can be raised at any time.

*Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015)).

Therefore, the court must be satisfied that a decision in the plaintiff's favor would

"significantly increase the likelihood that [the plaintiff] would obtain relief that

directly redresses the injury that she claims to have suffered." *Id.* (internal

punctuation and alteration omitted) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241,

1260 n.7 (11th Cir. 2010)).

In *Luckey v. Harris*, which involved a complaint against the governor of

Georgia and certain state judges regarding the state's provision of legal services to

indigent criminal defendants, the Eleventh Circuit explained that "[a]ll that is

required [for injunctive relief against a state official] is that the official [sued] be

responsible for the challenged action." 860 F.2d 1012, 1015 (11th Cir. 1988).

Thus, "the state officer sued must, by virtue of his office, have some connection

with the unconstitutional act or conduct complained of.  Whether this connection

arises out of general law, or is specially created by the act itself, is not material so

long as it exists." *Id*. at 1015-16 (internal punctuation, alteration and citation

omitted).  The court therefore concluded that prospective relief could be ordered

against the judges because they were "responsible for administering the system of

representation for the indigent criminally accused." *Id*. at 1016.

Relying on this "binding precedent" from *Luckey*, the Eleventh Circuit, in *Georgia Latino Alliance*, rejected the state officials' argument that the plaintiffs did not have standing to sue because the state officials lacked enforcement authority over the challenged statute.  691 F.3d at 1260 n.5.  The court emphasized that it was "easily satisfied" that the plaintiffs met the traceability and redressability requirements to bring a pre-enforcement challenge against the officials, where "[e]ach injury [was] directly traceable to the passage of [the challenged statute] and would be redressed by enjoining each provision" of the statute.  *Id*. at 1260.

Following this reasoning, the Court finds that the traceability and redressability requirements are satisfied in this case.  The injuries Plaintiffs allege are directly traceable to SB 202, for which County Defendants have enforcement responsibility.  County Defendants' argument that SB 202's provisions are not traceable to them and cannot be redressed by entering an injunction against them is without merit.  Notably, they concede that they must enforce SB 202 and do not dispute Plaintiffs' assertion that county officials are directly responsible for enforcing numerous election administration provisions of SB 202—from the new absentee ballot application and voting requirements to the provision of ballot drop boxes.

Further, County Defendants have not cited any authority that supports their argument that Plaintiffs cannot establish redressability without bringing suit against all Georgia counties. *Bush v. Gore*, 531 U.S. 98 (2000), which County Defendants cite, is inapposite because that opinion did not analyze standing. Rather, the Supreme Court addressed the manual recount of paper ballots in a Florida election and the related issue of disparate treatment of voters across the state under the Equal Protection Clause of the Fourteenth Amendment. *Id*. at 107. Those circumstances are easily distinguishable from County Defendants' redressability argument.

Regardless, to satisfy redressability requirements for standing purposes, Plaintiffs need to show only that an injunction against County Defendants would address at least some of the alleged injuries in this case. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (finding that the plaintiff had standing to sue the defendant even if only "a small part of the [total] injury [was] attributable to" the defendant). They have fulfilled that requirement.

Based on the foregoing analysis, the Court finds that the Article III standing requirements to bring this suit are satisfied by at least AAAJ-A.

## B.      Failure to State a Claim

Having resolved the threshold standing issue, the Court now turns to State and Intervenor Defendants' arguments that the Amended Complaint fails to state a claim upon which relief may be granted.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."[8]  *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 989 (11th Cir. 2012).  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 557)).

---

[8] A court is limited to reviewing what is alleged "'within the four corners of the complaint.'"  *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).  If the court accepts matters outside the complaint, it "must convert the motion to dismiss into one for summary judgment."  *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'"  *Burch v. Remington Arms Co.*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *Traylor*, 491 F. App'x at 990 (quoting *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

The Court will now address the question of whether Plaintiffs have satisfied

their pleading burden with respect to each count of the Amended Complaint.[9]

### 1. Count I (intentional discrimination and discriminatory results under § 2 of the VRA)[10]

Plaintiffs allege that SB 202 violates § 2 of the VRA because it was

"adopted for the purpose of denying voters of color full and equal access to the

---

[9] State Defendants address the challenged provisions individually rather than in connection with the specified counts of the Amended Complaint. This approach, however, analyzes the challenged provisions out of context and does not account for Plaintiffs' contention that the challenged provisions also ***collectively*** violate the law. For the purpose of deciding the instant motions, the Court will evaluate each count as a whole and determine whether Plaintiffs have stated a claim as to the specific count.

[10] Complaints seeking to invalidate a voting statute on the grounds that it is discriminatory typically allege claims under § 2 of the VRA and/or the Fourteenth and Fifteenth Amendments. *See, e.g.*, *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1329 (11th Cir. 2021). VRA § 2 claims generally constitute allegations of vote dilution (*e.g.*, challenges to election districting schemes) or vote denial (*e.g.*, challenges to time, place or manner restrictions on voting, such as absentee and in-person voting rules). Either type of claim may be asserted as a discriminatory purpose/intent claim (*i.e.*, the statute was enacted with discriminatory intent and has a discriminatory effect) or a discriminatory results claim (*i.e.*, the statute results in the abridgement of the right to vote under the circumstances). *See Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991). Claims brought under the Fourteenth and Fifteenth Amendment require proof of discriminatory intent and effect (whether in the vote dilution or vote denial context). *See Greater Birmingham*, 992 F.3d at 1328-29. Therefore, the analysis of Fourteenth and Fifteenth Amendment discriminatory intent claims mirrors that of § 2 intent claims. In this case, Plaintiffs assert vote denial claims. The Complaint asserts § 2 discriminatory intent and purpose claims (Count I) and Fourteenth and Fifteenth Amendment discriminatory intent claims (Count II).

political process," and "the challenged provisions, individually and cumulatively, will disproportionately deny voters of color an equal opportunity to participate in the political process."  Am. Compl. ¶ 121-22, ECF No. 27.  The Amended Complaint explains that:

> (i) Georgia has engaged in a "decades-long campaign to disenfranchise non-white voters through racially discriminatory voting laws," and "SB 202 is the latest iteration" in that process;

> (ii) "the Georgia General Assembly embarked on a relentless campaign to amend the state's voting laws" after "Georgians elected Jon Ossoff and Raphael Warnock—the first Jewish American and Black U.S. Senators, respectively, to represent Georgia";

> (iii) SB 202 was enacted "[t]hrough a rushed and close-doored legislative process," "without notice to advocates, voters, or, at times, even other legislators" and while thwarting the participation of minority groups in the legislative process;

> (iv) Georgia House Speaker David Ralston's comment that the proliferation of absentee ballots would increase voter turnout "evinced [his] intent to deprive *non-white voters* of ballot access"; and

> (v) SB 202's changes to the absentee-by-mail voting process will be "particularly harmful" to AAPI voters.

*Id*. ¶¶ 4, 61, 73-74, 76-77, 80.  Other paragraphs in the Amended Complaint expound on these points.  For example, Plaintiffs assert that:

> (i) "AAPIs voted by absentee-by-mail ballot at a higher rate than any other racial group in Georgia";

> (ii) the "Asian American community has a higher proportion of foreign-born residents compared to other racial groups in Georgia";

(iii) "[LEP] remains common in the Georgia Asian American community"; and

(iv) "[a]bsentee-by-mail voting allows [AAPI and LEP] voters crucial time and resources" to seek assistance that may be less available or accessible through in-person voting."

*Id*. ¶¶ 1, 6. The Amended Complaint ultimately concludes that SB 202 "interacts with historical, socioeconomic, and other electoral conditions in Georgia to prevent voters of color, particularly AAPI voters, from having an equal opportunity to participate in the political process on account of their race or color." *Id*. ¶ 122.

In a nutshell, State Defendants argue that Plaintiffs' discrimination claims should be dismissed because "the alleged disparate impacts are minimal at best, the history relied on is far distant, the legislation went through normal channels and the legislature explained exactly what it was doing in the first pages of the bill, and none of the statements by the legislature itself [was] racially discriminatory." State Defs.' Br. 25, ECF No. 41-1.

Intervenor Defendants argue that the challenged provisions of SB 202 "impose nothing beyond the usual burdens of voting"; "Plaintiffs [improperly] focus on how each provision of SB 202 burdens a particular method of voting, without considering the [s]tate's entire [voting] system"; and "Plaintiffs misstate the strength of the state interests behind the challenged laws." Intervenor Defs.' Br. 10-13, ECF No. 54-1. Intervenor Defendants also contend that Plaintiffs have

failed to assert certain facts required by *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2336 (2021), including "allegations comparing Georgia's laws with those of other [s]tates" and those stating "'the size' of any racially disparate impacts." *Id*. at 11.

> A violation of § 2 of the VRA
>
> is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the [s]tate or political subdivision are not equally open to participation by members of a [protected] class . . . in that [they] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).[11]  To evaluate a results claim under § 2 of the VRA, courts have relied on the factors that the Supreme Court identified in *Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986), such as the extent of any history of discrimination affecting the right to vote, the scope of racially polarized voting and

---

[11] Courts generally analyze discriminatory intent or purpose claims under the framework the Supreme Court established in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267-68 (1977). However, *Arlington Heights* did not involve a voting statute, so it does not track or refer to the language of § 2.  Discriminatory results claims, on the other hand, are usually analyzed under the framework the Supreme Court developed in *Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986).  *Gingles* involved a vote dilution claim, and the relevant analysis incorporates the text of § 2.

the degree to which discrimination hinders the class's ability to participate in the voting process.[12]

However, the Supreme Court's opinion in *Brnovich* called into question the usefulness of some of the *Gingles* factors in evaluating a vote denial claim under § 2 of the VRA.[13]  *Brnovich*, 141 S. Ct. at 2340.  The Supreme Court identified other factors that may be relevant but specifically "decline[d] . . . to announce a test to govern all VRA § 2 claims" involving time, place or manner voting restrictions. *Id*. at 2336.  It explained that *Brnovich* was its "first foray" into deciding this type of claim and therefore found it "sufficient for present purposes to identify certain ***guideposts***" that led to its decision rather than to mandate a test that must be satisfied in all circumstances.  *Id*. (emphasis added).

These guideposts include the size and degree of the burden on voting, the size of the disparities between the protected class and other groups, the opportunities provided by a state's voting system, etc.  *See id*. at 2336, 2338-39. Because this list is neither exhaustive nor prescriptive, *Brnovich* does not require Plaintiffs to plead any specific set of factors.

---

[12] Not all factors will be pertinent or essential to all claims.  *See Nipper v. Smith*, 39 F.3d 1494, 1526-27 (11th Cir. 1994).

[13] *Gingles* was a vote ***dilution*** case, wherein the plaintiff claimed that legislative districting plans diluted the ability of particular voters to affect the outcome of elections.  478 U.S. at 47.

Here, Plaintiffs' allegations identified above correspond with *Gingles* factors that may be relevant in this specific circumstance and ultimately weigh upon the issue of whether the political process in Georgia is equally open to all voters. Therefore, Plaintiffs have stated a plausible discriminatory results claim under § 2 of the VRA.[14]

While State and Intervenor Defendants' arguments regarding the burden on voters, Georgia's voting system as a whole and Georgia's underlying interests in enacting SB 202 will likely be relevant to the analysis of Plaintiffs' claims at a later stage of this case, those contentions investigate the merits of the claims, and their resolution requires an inquiry into facts not alleged in the Amended Complaint. Therefore, they are not appropriate at the motion to dismiss stage.

Additionally, contrary to State and Intervenor Defendants' contentions, *Brnovich* did not establish requirements that Plaintiffs failed to meet here. The language in *Brnovich* could portend future requirements to state or prove a § 2 time, place or manner claim, but it should not be interpreted as currently setting

---

[14] Plaintiffs bring intent claims under § 2 as well as under the Fourteenth and Fifteenth Amendments. Since all of these claims are analyzed in the same way, the Court applies its conclusion that Plaintiffs have stated Fourteenth and Fifteenth Amendment intent claims, *see* section II(B)(2), *infra*, to find that Plaintiffs have also stated a § 2 intent claim.

forth pleading requirements that Plaintiffs must fulfill in this case.[15]  In other

words, Plaintiffs are not required to allege the *Brnovich* factors or otherwise

provide detailed facts regarding them.  *See id.* at 2336; Fed. R. Civ. P. 8(a)(2)

(requiring a plaintiff to provide only "a short and plain statement of the claim

showing that the pleader is entitled to relief").

For all these reasons, the Court declines to dismiss Count I of the Amended

Complaint.

### 2. Count II (intentional discrimination under the Fourteenth and Fifteenth Amendments)

Plaintiffs allege that SB 202 violates the Fourteenth and Fifteenth

Amendments because it was "purposefully enacted and [it] operates to deny,

abridge, or suppress the right to vote of otherwise eligible voter[s] on account of

race or color."  Am. Compl. ¶ 128, ECF No. 27.  The facts underlying this

conclusion are largely the same as those described in section II(B)(1), *supra*.

In seeking dismissal of Plaintiffs' discrimination claim, State Defendants do

not distinguish their arguments between Counts I and II of the Amended

---

[15] *Compare Guideline*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/guideline (last visited Dec. 6, 2021) ("an indication or outline of policy or conduct") *with Requirement*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/requirement (last visited Dec. 6, 2021) ("something essential to the existence or occurrence of something else"). "Guideline" and "Guidepost" are equivalent in the Merriam-Webster dictionary.

Complaint, so the Court assumes their arguments apply equally to both counts. Those arguments are set forth above and are not repeated here.

Intervenor Defendants make similar arguments but also contend that the Court should focus on the legislative findings underlying SB 202, which they assert are "the only reliable evidence of *the legislature's* purposes."  Intervenor Defs.' Br. 14, ECF No. 54-1.  In their view, those findings prove that SB 202 was not enacted with discriminatory intent, and they argue that partisan motives are not the same as racial motives.  *Id*. at 13.

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court of the United States identified a non-exhaustive list of factors that courts can use to evaluate whether government action was undertaken with discriminatory intent.[16]  429 U.S. 252, 267-68 (1977).  These include the "historical background of the decision"; the "specific sequence of events leading up to the challenged decision"; "[d]epartures from the normal procedural sequence" in taking the action; "[t]he legislative or administrative history," including "contemporary statements by members of the decisionmaking body";

---

[16] State and Intervenor Defendants do not dispute that *Arlington Heights* governs Plaintiffs' discriminatory purpose claim.

and whether the "impact of the official action . . . bears more heavily on one race than another." *Id*.

Because the aforementioned allegations in the Amended Complaint are consistent with the *Arlington Heights* factors and otherwise bear on the issue of intentional discrimination, the Court finds that Plaintiffs have stated a plausible discriminatory purpose claim.  At the motion to dismiss stage, Plaintiffs are not required to establish "a significant probability that the facts are true," *Burch*, 2014 WL 12543887, at *2, and only have to state facts sufficient to "nudge[] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. They have done so here.

State and Intervenor Defendants' arguments, which attack the validity of Plaintiffs' allegations, are premature at this stage because they go to the merits of the claim and not to the question of whether Plaintiffs have asserted a plausible claim for relief.

Further, as the Court explained above, the *Brnovich* factors are not prescriptive, and the failure to allege any of them does not require dismissal of the Amended Complaint.  The Court acknowledges that the *Brnovich* opinion discusses the legislators' intent in passing the challenged statute, but that analysis does not support Intervenor Defendants' position that *Brnovich* now requires

plaintiffs in cases such as this one to allege that the legislature as a whole acted with discriminatory intent.  The Supreme Court's discussion of intent in that case occurred in the course of its review of whether the district court's interpretation of the evidence of discrimination was "permissible" under the clearly erroneous standard of review.  *Brnovich*, 141 S. Ct. at 2349.  The district court found no indication that the legislature "as a whole" was motivated by race, despite evidence in the record that a video reflecting a racial appeal played a role in the legislature's actions.  *Id*. at 2349-50.  The Supreme Court concluded that the district court's finding was not clearly erroneous.  *Id*.  When viewed in context, this finding does not establish a new test to state a discrimination claim, especially in light of the Supreme Court's express disavowal of doing so.

For all these reasons, the Court declines to dismiss Count II of the Amended Complaint.

### 3. Count III (undue burden on the right to vote under the First and Fourteenth Amendments)

Plaintiffs allege that the "challenged provisions of SB 202 collectively and individually impose severe and, at a minimum, significant burdens on eligible Georgia voters' right to vote."  Am. Compl. ¶ 134, ECF No. 27.  Specifically, they contend that SB 202 makes it more difficult for AAPI citizens to vote, including by restricting timeframes to request and receive absentee ballots, *see, e.g.*, *id.* ¶¶ 82-

91; inserting barriers to access secure ballot drop boxes, *see, e.g.*, *id.* ¶¶ 92-101; and prohibiting the proactive mailing of ballot applications, *see, e.g.*, *id.* ¶¶ 102-08. Plaintiffs further allege that "[n]one of the burdens imposed by the challenged provisions of SB 202 are reasonably related to, let alone necessary to achieve, any sufficiently weighty legitimate state interest." *Id.* ¶ 137.

State Defendants argue, among other things, that Plaintiffs have not pleaded a burden under the applicable *Anderson/Burdick* framework for evaluating voting rights claims because "Georgia has numerous options for voters to cast their ballots and request absentee ballots," and the state's interest underlying the challenged provisions "more than outweighs any burden" the provisions impose on voters. State Defs.' Br. 21, ECF No. 41-1.

Intervenor Defendants additionally argue that because "[m]ost of the challenged provisions of SB 202 regulate only absentee voting," "the right to vote is not at stake here." Intervenor Defs.' Br. 3, ECF No. 54-1 (internal punctuation omitted). They also argue that "[t]he only burdens that Plaintiffs assert are legally irrelevant because they are special burden[s] on some voters, not categorical burdens on all voters." *Id.* at 6.

In resolving an undue burden on voting claim, a court must: (i) "consider the character and magnitude of the asserted injury to the rights protected by the

First and Fourteenth Amendments that the plaintiff seeks to vindicate"; (ii) "identify and evaluate the precise interests put forward by the [s]tate as justifications for the burden imposed by its rule"; (iii) "determine the legitimacy and strength of each of those interests"; and (iv) "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  The analysis is not a "litmus-paper test" and instead requires a "'flexible'" approach.  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (citation omitted).  If a court finds that a plaintiff's voting rights "are subjected to severe restrictions, the [respective] regulation must be narrowly drawn to advance a state interest of compelling importance.  But when [the law] imposes only reasonable, nondiscriminatory restrictions . . . , the [s]tate's important regulatory interests are generally sufficient to justify the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal punctuation and citation omitted).

Here, the Amended Complaint contains detailed allegations of burdens that Plaintiffs assert the challenged provisions will impose on Georgia voters. Plaintiffs also maintain that there are no legitimate state interests that would support such burdens.  *Anderson* and *Burdick* do not require more from Plaintiffs at the motion to dismiss stage.  Because State and Intervenor Defendants' weighing

26

of the alleged burden on voters relies on facts not asserted in the Amended Complaint, such analysis is not appropriate at this time.

The Court also declines, as Intervenor Defendants suggest, to forego the undue burden analysis the Supreme Court developed in *Anderson* and *Burdick* and summarily dispose of Plaintiffs' voting rights claims. The Court does not read *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 807-08 (1969), which states that there is no right to an absentee ballot, to require such an outcome. As discussed above, the *Anderson-Burdick* framework requires the Court to evaluate the type of burden imposed by the challenged provisions and apply the corresponding level of review. "Only after weighing [the designated] factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson*, 460 U.S. at 789.

For all these reasons, the Court declines to dismiss Count III of the Amended Complaint.

## III.   <u>CONCLUSION</u>

Based on the foregoing analysis, the Court **DENIES** Defendants' motions to dismiss (ECF Nos. 41, 53, 54).[17]

---

[17] The Court does not address State Defendants' argument that the Court lacks jurisdiction to consider Plaintiffs' VRA § 2 claims because there is no implied cause of action under the VRA. This argument was raised for the first time in State

**SO ORDERED** this 21st day of April, 2022.

J. P. BOULEE
United States District Judge

---

Defendants' reply brief and therefore will not be considered.  *See Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief.").  The Court notes that the issue of whether a cause of action exists under a statute is not jurisdictional, *see Mata v. Lynch*, 576 U.S. 143, 150 (2015) (noting that the absence of a valid cause of action does not implicate subject-matter jurisdiction), so the Court is not otherwise obligated to address the belated argument at this time.