## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE GEORGIA SENATE BILL 202 | No. 1:21-mi-55555-JPB |

### INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTIONS

The plaintiffs ask this Court to enjoin a state election law three months before in-person voting begins. The law at issue prohibits giving gifts to voters waiting in line at polling places. The plaintiffs contend that this gift-giving ban facially violates the First Amendment. Intervenors join the State's opposition to the plaintiffs' motion. They write separately to address why the motion should be denied under *Purcell*, and why the claims likely fail on the merits.

The proximity of the election alone forecloses a preliminary injunction. Under *Purcell v. Gonzalez*, 549 U.S. 1 (2006), "a court should ordinarily decline to issue an injunction—especially one that changes existing election rules—when an election is imminent." *Coalition for Good Governance v. Kemp* (*CGG*), 2021 WL 2826094, at *3 (N.D. Ga. July 7). The Eleventh Circuit recently held that *Purcell* foreclosed an injunction of the same kind of law *four* months before voting began. *See League of Women Voters of Fla. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022). The plaintiffs here are not somehow entitled to an injunction *three* months before voting begins.

On the merits, the plaintiffs are wrong to characterize gift-giving as protected First Amendment expression simply because it promotes their voting-related goals. "[F]acilitating voting" is "not … communicating a message." *Feldman v. Ariz. Sec'y of State's Off.*, 840 F.3d 1057, 1084 (9th Cir. 2016). It is

unprotected conduct. And because the plaintiffs allege a facial challenge, they cannot win unless they demonstrate that most applications of the statute prohibit protected expression, which is an impossible task given the wide range of reasons why someone might distribute things to voters in line. In any event, the gift-giving ban would pass constitutional muster because it is a reasonable time, place, or manner restriction, satisfies *O'Brien*, and satisfies *Anderson-Burdick*.

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden." *Georgiacarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). To carry that burden, the plaintiffs typically must show a "substantial likelihood" of success on the merits, irreparable injury absent an injunction, that the balance of equities favors them, and that an injunction favors the public interest. *Id.* But in cases like this one, courts are also "required to weigh … considerations specific to election cases." *LWVF*, 32 F.4th at 1371. Those considerations counsel courts to decline to issue injunctions this close to elections, "often (as [they] could not do under the traditional test) while expressing no opinion on the merits." *Id.* (cleaned up). The plaintiffs cannot overcome this heavy burden, either on the equities or the merits.

## I.  *Purcell*, as applied in *League of Women Voters*, forecloses relief.

*Purcell* is a "bedrock tenet of election law." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral). It holds that the "traditional test"

for injunctive relief "does not apply" when a plaintiff seeks "an injunction of a state's election law in the period close to an election." *Id*.

*Purcell* reflects important equitable concerns with disrupting elections. Preliminary injunctions of election laws undermine "[c]onfidence in the integrity of our electoral processes" and "the functioning of our participatory democracy." *Purcell*, 549 U.S. at 4. They cause "voter confusion" and drive citizens "away from the polls." *CGG*, 2021 WL 2826094, at *3. They force election administrators to reorder their affairs and "grapple with a different set of rules." *Id*. And they invite the "potential for 'whiplash' if orders of [a district court] and subsequent rulings of appellate courts resul[t] in different conclusions." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 2022 WL 633312, at *75 (N.D. Ga. Feb. 28). "Even seemingly innocuous late-in-the-day judicial alterations … can interfere … and cause unanticipated consequences." *DNC v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurral).

Preliminary injunctions of state election laws also raise federalism concerns. "Our founding charter never contemplated that federal courts would dictate the manner of conducting elections." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1269 (11th Cir. 2020). Federal injunctions of state election laws inherently cause the "seriou[s] and irreparabl[e] harm" of preventing a State from "conducting [its] elections pursuant to a statute enacted by the Legislature." *New Ga. Proj. v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020).

The Supreme Court has "reiterated this directive on many occasions." *CGG*, 2021 WL 2826094, at *3. It has "often" stayed "lower federal court injunctions that contravened" *Purcell. Milligan*, 142 S. Ct. at 880 (Kavanaugh,

3

J., concurral); *e.g.*, *Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *Andino v. Middleton*, 141 S. Ct. 9 (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 190 (2020); *Clarno v. People Not Politicians Or.*, 141 S. Ct. 206 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020); *RNC v. DNC*, 140 S. Ct. 1205 (2020). So has the Eleventh Circuit. *LWVF*, 32 F.4th 1363; *see also New Ga. Proj.*, 976 F.3d at 1283.

In order to determine whether *Purcell* applies to a motion for a preliminary injunction of a state election law, courts ask whether the election at issue is "sufficiently 'close at hand.'" *LWVF*, 32 F.4th at 1371. In *Milligan*, the Supreme Court stayed an injunction where the next election was "about four months" away. 142 S. Ct. at 888 (Kagan, J., dissental). And in *League of Women Voters of Florida*, the Eleventh Circuit stayed an injunction where voting was "set to begin in less than four months." 32 F.4th at 1371. Four months before voting, the Eleventh Circuit concluded, "*easily* falls within the time period that trigger[s] *Purcell*." *Id.* at 1371 n.6 (emphasis added). Even six months can be sufficient. *E.g.*, *Thompson v. Dewine*, 959 F.3d 804, 813 (6th Cir. 2020), *application to vacate stay denied*, 2020 WL 3456705 (U.S.).

The election here is sufficiently close at hand. The hearing on this preliminary injunction motion is scheduled for July 18, 2022. The law that the plaintiffs seek to enjoin governs their activity with respect to voting lines, prohibiting them from "giving … any money or gifts … to an elector" within 150 feet of a polling place or 25 feet of a voter in line to vote. O.C.G.A. §21-2-414(a). In-person voting in Georgia, and thus the window for giving gifts to voters in line, will begin on October 17, 2022. O.C.G.A. §21-2-385(d)(1). That is less than

three months after the hearing. The time it will take to litigate the inevitable appeal will tighten this window. Because even a four-month window is "easily" too imminent, *Purcell* applies here. *LWVF*, 32 F.4th at 1371 n.6.

Any argument that *Purcell* does not apply to this type of law cannot be squared with *League of Women Voters of Florida*. In that case, a district court considered a motion to preliminarily enjoin a Florida law that prohibited the plaintiffs from engaging in "line warming activities," which meant providing voters in line at polling places with things like "food, water, or umbrellas." *League of Women Voters of Fla., Inc. v. Lee*, 2022 WL 969538, at *64 (N.D. Fla. Mar. 31). It held that the law violated the First Amendment and permanently enjoined it. *Id.* at *71. Importantly, the district court made post-trial findings that its injunction "would not have any impact" on state election administration and would not generate any "undue collateral effects." *Id.* at *102. It even found that the injunction would in fact "improve election administration in Florida." *Id.*

The Eleventh Circuit issued a unanimous decision staying the injunction and allowing the Florida law to go back into effect. *LWVF*, 32 F.4th 1363. It stayed the injunction under *Purcell* alone, and even said that it could do so (if it wished) "while expressing no opinion on the merits." *Id.* at 1371 (cleaned up). "Whatever *Purcell*'s outer bounds," the Eleventh Circuit reasoned, "we think that this case fits within them." *Id.*

The plaintiffs' only attempt to distinguish *League of Women Voters of Florida* is to point out that their First Amendment arguments against the law here are not *substantively* identical to the ones accepted by the district court

in that case. *See* AME Mot. at 32 ("Plaintiffs do not make a void-for-vagueness or overbreadth argument."). While that distinction might affect the merits analysis, it has no bearing on whether *Purcell* applies. *Purcell* asks whether a federal court is enjoining a state election law too close to the next election. Under *League of Women Voters of Florida*, *Purcell* applies to a federal injunction of a state election law limiting allegedly expressive line-gifting activities four months before voting begins. So it applies here.

The plaintiffs also argue that *Purcell* doesn't apply because, they say, the Supreme Court did not apply it in *Wisconsin Legislature v. Wisconsin Elections Commission*, 142 S. Ct. 1245, 1248 (2022). AME Mot. 29. Despite "order[ing] entirely new maps" in advance of elections "that were just over four months later," the plaintiffs say that the Supreme Court there "did not apply" *Purcell*. *Id.* The plaintiffs appear to be suggesting that *Purcell* no longer applies in re-districting cases, since the Court in *Wisconsin Legislature* "did not even mention *Purcell*." AME Mot. 30. *But see Milligan*, 142 S. Ct. 879. Or they appear to think, paradoxically, that the Supreme Court *violated* the *Purcell* principle in *Wisconsin Legislature*.

Whatever it is, the plaintiffs' argument is unpersuasive. The district court in *League of Women Voters of Florida* also raised *Wisconsin Legislature* as a reason why *Purcell* might not foreclose its injunction. *See* 2022 WL 969538, at *100. But the Eleventh Circuit entered a stay under *Purcell* anyway. 32 F.4th 1363. The plaintiffs do not explain why this Court should follow supposed silences in a Supreme Court opinion about redistricting over a later decision from the Eleventh Circuit applying *Purcell* in an identical context.

In any event, the Supreme Court did not mention *Purcell* in *Wisconsin Legislature* for an obvious reason: It was not invalidating a state legislature's election law. In *Wisconsin Legislature*, the state legislature and governor had failed to enact any new maps after the most recent census, so the state supreme court imposed judicial maps. 142 S. Ct. at 1249. The legislature appealed to the Supreme Court, which reversed the judicial maps because they were racially gerrymandered. *Id.* at 1251. Then, rather than ordering new maps itself, *cf.* AME Mot. 29, the Court remanded for the state supreme court to choose a proper remedy, 142 S. Ct. at 1251. The Supreme Court's opinion did not implicate *Purcell* because it was limited to the merits; it did not enjoin the State from "conducting this year's elections pursuant to a statute enacted by the Legislature." *New Ga. Proj.*, 976 F.3d at 1283. Even if the Supreme Court had entered equitable relief itself, its decision would not implicate *Purcell* because the state supreme court had *already* enjoined the State's election law. "Correcting an erroneous lower court injunction," as the Supreme Court did in *Wisconsin Legislature*, "does not itself constitute a *Purcell* problem. Otherwise, appellate courts could never correct a late-breaking lower court injunction of a state election law. That would be absurd and is not the law." *Milligan*, 142 S. Ct. at 882 n.3 (Kavanaugh, J., concurral).

Once *Purcell* applies, it is a *sufficient* basis to deny a preliminary injunction. *See LWVF*, 32 F.4th at 1371. The Supreme Court has invoked the *Purcell* principle while expressing "no opinion" on the merits, *Purcell*, 549 U.S. at 5; where the plaintiffs had "a fair prospect of success," *Milligan*, 142 S. Ct. at 881 n.2 (Kavanaugh, J., concurral); and even where the challenged law was

"invalid," *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). District courts, too, often decline to issue injunctions based on *Purcell* where all other factors would favor relief. *E.g.*, *Alpha Phi Alpha*, 2022 WL 633312, at *76 (holding that plaintiffs were likely to succeed on the merits and suffer irreparable harm, but denying a preliminary injunction because "[t]he Court is unable to disregard the *Purcell* principle").

For plaintiffs to overcome *Purcell*, they must satisfy "at least" the following four factors:

1. the underlying merits are entirely clearcut in their favor;
2. they would suffer irreparable harm absent the injunction;
3. they have not caused undue delay; and
4. their requested changes are feasible before the election without significant cost, confusion, or hardship.

*Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurral). If any one of these four factors is not met, then their motion must be denied. *See LWVF*, 32 F.4th at 1372 n.8 ("Justice Kavanaugh provided three additional factors—*all* of which must be satisfied to justify an injunction under *Purcell*."). The plaintiffs cannot satisfy factors one, three, or four.

As to factor one, the merits of the plaintiffs' case are not entirely clearcut. As discussed in the State's brief and Part II of this brief, the plaintiffs' claims are wrong. The conduct that the State prohibits—giving gifts to voters waiting in line—is not expressive. It is certainly not expressive in enough applications to justify facial relief. Because the plaintiffs have "failed to contend with any of the 'plainly legitimate' applications" of the gift-giving ban, *LWFV*, 32 F.4th at 1374, they cannot overcome factor one. And even if the prohibited conduct

were all expressive, the law passes the relaxed scrutiny to which it is subject. The plaintiffs' arguments to the contrary, "at the very least, aren't 'entirely clearcut.'" *Id.* at *6.

Factor three independently forecloses relief because *Purcell* requires that, in addition to filing their complaint without delay, plaintiffs pursue a preliminary injunction without delay. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). Here, the challenged provision was enacted in March 2021, but the plaintiffs waited until late May 2022 to move for a preliminary injunction. The whole point of a preliminary injunction is to avoid "*imminent* harm," so "by sitting on [their] rights for even a few months"—let alone a year, and only months away from the next election—the plaintiffs have "squandered any corresponding entitlement to [that] relief." *Alabama v. U.S. Dep't of Com.*, 546 F. Supp. 3d 1057, 1073-74 (M.D. Ala. 2021) (collecting cases); *accord CGG*, 2021 WL 2826094, at *3 (denying a preliminary injunction because the "[p]laintiffs waited almost three months after SB 202 passed and until the eve before the underlying election to file their Motion"); *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020) (similar). Because they waited over a year, the plaintiffs allowed several Georgia elections to go forward *under S.B. 202*, including the statewide primaries and run-offs. Because "all of the challenged provisions are already the law" and election administrators "have implemented them," the plaintiffs' request to "change the law" for the general election exacerbates the harms identified in *Purcell*. *CGG*, 2021 WL 2826094, at *3.

Factor four also independently forecloses relief because an injunction would cause confusion and hardship. *Milligan*, 142 S. Ct. at 881 (Kavanaugh,

J., concurral). Many Georgians, who can see that their written law bans gift-giving and have experienced multiple elections with the ban in effect, would be confused, suspicious, and disenchanted if this activity suddenly reappearred. And though these plaintiffs say they will distribute food and water, other groups might (mis)read this Court's decision to authorize far more. At the least, confused voters and groups would inundate state and local officials with inquiries and calls. And state election officials would have to "grapple with a different set of rules," forcing them to reeducate and retrain workers and volunteers throughout the State. *CGG*, 2021 WL 2826094, at \*3. The number of third-party groups approaching voters in line will also increase, requiring increased vigilance and monitoring by election officials to prevent electioneering, coercion, and other undue influence. Even an injunction that "seem[s] innocuous" may well "interfere with administration of an election and cause unanticipated consequences." *LWVF*, 32 F.4th at 1371 (quoting *DNC v. Wis. State Leg.*, 141 S. Ct. at 31 (Kavanaugh, J., concurral)).

In sum, even if Plaintiffs' arguments had merit, their motion for a preliminary injunction must be denied because it asks this Court to interfere with Georgia's elections laws shortly before voting begins. *Purcell* does not mean that Plaintiffs will ultimately *lose* this case. 549 U.S. at 5. But it does mean that their case must "proceed without an injunction suspending the [challenged election] rules." *Id.* at 6.

## II.   The gift-giving ban is constitutional.

The gift-giving ban states that "[n]o person shall … give, offer to give, or participate in the giving of any money or gifts, including, but not limited to

food and drink, to an elector" within 150 feet of a polling place or 25 feet of someone standing in line to vote. O.C.G.A. §21-2-414(a). This provision does not regulate expressive conduct, and especially does not do so in every application. Even if it did, it would be subject to relaxed scrutiny, which it would pass.

## A.    The gift-giving ban does not regulate expressive conduct.

The First Amendment does not protect conduct simply because "the person engaging in [it] intends thereby to express an idea." *Rumsfeld v. FAIR*, 547 U.S. 47, 65-66 (2006). Such an "expansive" definition of expressive conduct would allow a "limitless variety of conduct" to be labeled speech, since it's "possible to find some kernel of expression in almost every activity a person undertakes." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570 (1991) (cleaned up). Most conduct is "in part initiated, evidenced, or carried out by means of language." *FAIR*, 547 U.S. at 62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). But that is not enough. An individual might "express his disapproval of the Internal Revenue Service by refusing to pay his income taxes," for instance, but that fact does not subject the entire tax code to First Amendment scrutiny. *Id.* at 66.

Instead, conduct is protected only when it is "inherently expressive." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Conduct is inherently expressive when the expressive actor "inten[ds] to convey a particularized message" and "the likelihood [is] great that the message would be understood by those who viewed it." *Id.* Such conduct must be "sufficiently imbued with elements of communication." *Id.* at 406. While conduct need not express a narrow, succinctly

11

articulable message, it still must express an *identifiable* message. *See Bar-Navon v. Brevard Cty. Sch. Bd.*, 290 F. App'x 273, 276 (11th Cir. 2008) (message must be "identifiable"). There must be a "great likelihood" that "the particular conduct" conveys a message to the average viewer. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1347 (11th Cir. 2021). That message must be "overwhelmingly apparent." *FAIR*, 547 U.S. at 66.

Distributing gifts near a polling place is not inherently expressive. It conveys no particularized message that is overwhelmingly apparent. Even the plaintiffs in these various cases cannot agree on what message they are sending. They say that they are "protest[ing] against the government's failure to alleviate these long wait lines," AME Mot. 7 (cleaned up), expressing "gratitude," *id.*, reassuring voters that they are exercising "powerful weapons," *id.*, and "celebrating" the Civil Rights Movement, *id.* at 11. All this they communicate through "the unconditional offer of pretzels." *Id.* at 2.

But giving pretzels or any other gifts to voters, without more, could mean anything or nothing. It could mean, "I want you to eat pretzels so that you will get thirsty and buy some overpriced water," "We'd like to get rid of these extras," "I want to be your friend," or "Vote for my candidate." A recipient cannot tell which of these messages is being expressed without additional speech—a telltale sign that the conduct is "not … inherently expressive." *FAIR*, 547 U.S. at 66. Without some accompanying speech, a recipient could only "speculate" what "discernible message" is being expressed by the "mere act" of distributing food and drink. *Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 767-68 (M.D. Tenn. 2020). And crucially, that accompanying speech itself is left entirely

unaffected by the gift-giving ban. The plaintiffs remain free to approach every voter in line and protest the government's failure to alleviate long lines, express gratitude, reassure voters that they are exercising powerful weapons, and celebrate the Civil Rights Movement.

While the plaintiffs believe that their gift-giving conduct facilitates voting, "facilitating voting" is "not … communicating a message." *Feldman*, 840 F.3d at 1084. That's true even if the plaintiffs' conduct is "the product of deeply held personal belief," has "social consequences," or "discloses" their approval of voting (or their disapproval of lines). *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126-27 (2011). Giving each voter a $100 bill also facilitates voting and discloses approval of the franchise (probably better than food and drink), but the plaintiffs do not claim to have a First Amendment right to hand out cash to voters.

In fact, courts have held that far more direct methods of facilitating voting are not expressive conduct. Collecting and returning absentee ballots is not speech. *See Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018). Neither is collecting and returning voter-registration applications. *See Voting for Am.*, 732 F.3d at 391 & n.4. The plaintiffs do not contend that these cases are wrongly decided. *See* Opp. 21. But the groups in those cases also argued that their actions conveyed messages of support for voting, voters, and the democratic process. *See, e.g.*, *Knox*, 907 F.3d at 1181; *Feldman*, 840 F.3d at 1083; *Lichtenstein*, 489 F. Supp. 3d at 767. The plaintiffs cannot explain why providing gifts to people waiting in line communicates this message but helping people vote directly does not.

13

In response to the authorities against them, the plaintiffs rely principally on *Fort Lauderdale Food Not Bombs* v. *City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018) ("*Food Not Bombs I*"). That decision held that a group whose mission was inextricably tied up in issues related to food was engaged in expressive activity when it used food at its weekly events at a public park to bring attention to its message about "end[ing] hunger and poverty." *Id.* at 1238. The court emphasized the importance of the "factual context and environment" to its decision. *Id.* at 1245. It also explained that it was bound to construe all the relevant facts providing that context in favor of the plaintiff because it was reviewing a grant of summary judgment for the defendant. *Id.* at 1239. The court held for the plaintiff group because it used "tables and banners" at the events, used food at a "public park" that was an "undisputed public forum," and used "the sharing of food as the means for conveying its message." *Id.* at 1238, 1242-43.

The problem for the plaintiffs is that they are not spreading a message about hunger or thirst, but rather about voting, so they lack the same special symbolic justification. Furthermore, they seek to do so near a polling place, which is far from a traditional public forum. *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1886-88, 1883 (2018). They also do not do so as part of one large production with tables and banners integrated into their message, but rather in discrete acts with utilitarian goals. Combine this with the much less favorable posture of this case, and *Food Not Bombs I* is little help to the plaintiffs.

The gift-giving ban is a conventional regulation of conduct, no less subject to First Amendment scrutiny than hundreds of other laws that regulate the distribution of everything from food to cash. Of course, many laws prohibiting conduct impose "incidental" burdens on speech, but that "hardly means that the law[s] should be analyzed as one[s] regulating … speech rather than conduct." *Id.*; *see United States v. Williams*, 553 U.S. 285, 298 (2008) (laws regulating offers and conspiracies to engage in unlawful acts regulate conduct, not speech). The plaintiffs' attempt to constitutionalize all their activities—and effectively remove them from reasonable state regulation—should be rejected.

## B. Assuming that the gift-giving ban regulates expressive conduct, it does not do so in all applications.

Importantly, the plaintiffs seek facial invalidation of the gift-giving ban. They ask this Court for an injunction preventing all enforcement of the gift-giving ban, protecting themselves as well as "similar organizations and voters across the State" who wish to violate it. Doc. 185 at 2. To mount a successful facial challenge, the plaintiffs must demonstrate that the gift-giving ban is unconstitutional in "all possible applications." *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543, 1550 (11th Cir. 1997). In other words, they must demonstrate that "no set of circumstances exists under which the Act would be valid." *United States v. Martinez*, 736 F.3d 981, 991 (11th Cir. 2013). A preliminary injunction is unlawfully overbroad if it applies "across the board" to all enforcement of a law based on findings specific to the plaintiffs. *Brakebill v. Jaeger*, 905 F.3d 553, 559 (8th Cir. 2018) (citing *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008)).

But many circumstances exist where the gift-giving ban is indisputably valid. The Eleventh Circuit has held that "most social-service food sharing events will not be expressive." *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 11 F.4th 1266, 1292 (11th Cir. 2021) ("*Food Not Bombs II*"). In fact, the expressive nature of "food distribution" can be "decided in an as-applied challenge" only. *Food Not Bombs I*, 901 F.3d at 1241 (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1032 (9th Cir. 2006)). That's because food distribution is not "on its face an expressive activity." *Santa Monica Food Not Bombs*, 450 F.3d at 1032; *accord Food Not Bombs*, 901 F.3d at 1242 ("simply eating together in the park" is not expressive); *id.* at 1243 ("a picnic" is not expressive). The broader practice of gift-giving, meanwhile, might include commercial promotions, casual sharing, or just the disposal of unwanted things. The Eleventh Circuit has explained that "the provision of clothing [or] shelter," both of which would be covered by the gift-giving ban, "usually do[es] not involve expressive conduct." *Food Not Bombs II*, 11 F.4th at 1292. Because the plaintiffs cannot plausibly claim that all of these activities constitute protected expression, they cannot argue that the gift-giving ban is unconstitutional in all applications, and their facial challenge fails. *See LWVF*, 32 F.4th at 1374 (staying injunction because the district court "arguably failed to balance [the law's] legitimate applications against its potentially unconstitutional applications").

### C.   Assuming that the gift-giving ban regulated expressive conduct in all possible applications, it would not be subject to strict scrutiny.

If the plaintiffs are entitled to any constitutional scrutiny, it would be a relaxed standard: either a reasonable time, place, or manner restriction; a restriction of expressive conduct analyzed under *United States v. O'Brien*, 391 U.S. 367 (1968); or an election regulation analyzed under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

"Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). In *First Vagabonds Church*, the Eleventh Circuit assumed that the plaintiff group was engaged in expressive activity when it conducted group food-sharing events at parks to address the plight of the homeless. *First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 758 (11th Cir. 2011) (en banc). It explained that if this activity constituted protected expression at all, then a city law limiting it was not subject to strict scrutiny. Instead, it was a valid time, place, and manner restriction so long as it was "reasonable." *Id.* The city law in that case restricted the plaintiff group to only two such activities per year, which the Court held was a reasonable restriction. *Id.* at 759-61. That conclusion followed from the Supreme Court's decision in *Clark*, which upheld a restriction on camping in parks as applied to expressive demonstrators. 468 U.S. at 297.

Here, the gift-giving ban would be a reasonable time, place, and manner restriction. Food and drink can be distributed, just not at a certain place (near polling places) and at a certain time (during voting). And whatever message the distribution communicates can still be uttered, just not in a certain manner

(via gifts). *See Clark*, 468 U.S. at 294-95. The provision imposes a less restrictive limit on the plaintiffs' allegedly expressive activities than the restrictions upheld in *First Vagabonds Church* and *Clark*. Therefore, if it is treated as protected expression at all, it should likewise be upheld as a reasonable time, place, or manner restriction.

The gift-giving ban can also be upheld because it satisfies the *O'Brien* test. *See* 391 U.S. 367. That four-part test applies to expressive conduct and asks whether (1) the challenged law is within "the constitutional power of the government to enforce," (2) the government "had a substantial interest" that was "plainly served" by its law, (3) its interest was "unrelated to the suppression of expression," and (4) any "incidental restrictions of the alleged freedoms under the First Amendment were no greater than necessary to further the interest of the government." *First Vagabonds Church*, 638 F.3d at 761 (citing *Clark*, 468 U.S. at 298-99). The Eleventh Circuit upheld the restriction on food-sharing events in *First Vagabonds Church* under *O'Brien* because of the city's unquestioned power to regulate such activity, its "interest in managing park property," and its wide latitude to determine what restrictions were necessary to further that interest. *Id.* at 762.

The gift-giving ban satisfies *O'Brien*. Nobody questions that it is within the State's power to enforce. The provision also serves the State's interest in combatting "improper influence, political pressure, or intimidation while waiting in line to vote." S.B. 202, §2(13). These state interests are valid and strong. *Brnovich v. DNC*, 141 S. Ct. 2321, 2340 (2021). While some gift-givers might not have impermissible goals, the State can act prophylactically. *See Burson v.*

18

*Freeman*, 504 U.S. 191, 206-07 (1992) (plurality op.). The provision is not aimed at the suppression of ideas but rather at curtailing improper influence. And any incidental restrictions are no greater than necessary to further the State's interest because the provision specifically targets gift-giving while allowing expression on all issues to continue unimpeded.

Despite the plaintiffs' attempt to characterize the gift-giving ban as content-based, it is not. It prohibits *all* "giving of any money or gifts" near polling places. O.C.G.A. §21-2-414(a). It does not, as the plaintiffs contend, single out "the use of non-partisan line relief to celebrate and affirm the importance of political participation." AME Mot. 15. A person violates the provision if he hands out water as an attempt to induce people to leave the line for a nearby bathroom no less than if he hands out pretzels as an attempt to keep people in line. The provision does not speak in terms of any communicative elements and therefore is not content-based.

The plaintiffs are also mistaken that the gift-giving ban applies in "a traditional public forum[]." AME Mot. 14. The question is not what the regulated areas are in the abstract, but what they are "on Election Day." *Minn. Voters*, 138 S. Ct. at 1886. Courts are free to conclude that, on election day, "the parking lots and walkways leading to the polling places are nonpublic forums." *United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004). As the Supreme Court explained in *Minnesota Voters*, its decision in *Burson* did not resolve "whether the public sidewalks and streets *surrounding* a polling place qualify as a nonpublic forum." 138 S. Ct. at 1883. Justice Scalia, who provided the fifth vote in *Burson*, documented the long

tradition in this country of treating those areas as nonpublic forums. *See Burson v. Freeman*, 504 U.S. 191, 214-16 (1992) (Scalia, J., concurring in the judgment). A majority of the Court cited his opinion approvingly in *Minnesota Voters*, stressing that States have long restricted speech "in *and around* polling places on Election Day." 138 S. Ct. at 1883 (emphasis added). These areas are nonpublic forums during voting—*i.e.*, when the gift-giving ban applies.

Even if the gift-giving ban imposed a content-based restriction or involved a traditional public forum, it would be subject not to strict scrutiny, but to the *Anderson-Burdick* balancing test. When election laws implicate constitutional rights, they are presumptively analyzed under *Anderson-Burdick*'s more forgiving analysis rather than strict scrutiny. *Jacobson*, 974 F.3d at 1261. That is true for First Amendment claims no less than other claims. *E.g.*, *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 694 (11th Cir. 2014); *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789. Under *Anderson-Burdick*, a First Amendment restriction is valid so long as it imposes only "reasonable, nondiscriminatory restrictions" and is justified by "a State's important regulatory interests." *Stein*, 774 F.3d at 694 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)).

The gift-giving ban easily satisfies *Anderson-Burdick*. Requiring voters to vote without *private third parties* giving them food and water does not exceed the usual burdens of voting, and those third-party groups can still speak their intended messages and give gifts outside the small restricted zone. Because the gift-giving ban serves strong and valid governmental interests in combatting improper influence, political pressure, and intimidation, it passes

20

scrutiny under *Anderson-Burdick* or any other standard. *See Brnovich*, 141 S. Ct. at 2340.

## CONCLUSION

This Court should deny the plaintiffs' motions for preliminary injunctions.

Respectfully submitted,

Dated: June 24, 2022

/s/ *Cameron T. Norris*

John E. Hall, Jr.
   Georgia Bar No. 319090
William Bradley Carver, Sr.
   Georgia Bar No. 115529
W. Dowdy White
   Georgia Bar No. 320879
HALL BOOTH SMITH, P.C.
191 Peachtree St. NE, Ste. 2900
Atlanta, GA 30303
(404) 954-6967

Tyler R. Green (*pro hac vice*)
Cameron T. Norris (*pro hac vice*)
Jeffrey S. Hetzel (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com
jhetzel@consovoymccarthy.com

*Counsel for Intervenor-Defendants*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

*/s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

On June 24, 2022, I e-filed this document on ECF, which will email everyone requiring service.

*/s/ Cameron T. Norris*